474 A.2d 191

# DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE ADMINISTRATION and Department of Health & Mental Hygiene

v.

## John L. ARMACOST et al.

No. 153, Sept. Term, 1983.

Court of Appeals of Maryland.

May 1, 1984.

Diana G. Motz, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Ann Marie DeBiase and Janis Ashman, Asst. Attys. Gen., Baltimore, on brief), for appellants.

Charles W. Thompson, Jr., County Atty., Westminster, for appellees.

Stephen R. Beard, County Sol., Essom V. Ricks, Jr., and Patricia A. Logan, Asst. County Solicitors, Annapolis, on brief, for amicus curiae Anne Arundel County.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

This case concerns the propriety of granting an interlocutory injunction delaying the implementation in Carroll County of Maryland's Vehicle Emissions Inspection Program (VEIP).

## I.

The VEIP is one part of Maryland's overall effort to reduce air pollution within its borders. It is a segment of the national air pollution control scheme provided for by the federal Clean Air Act, codified as 42 U.S.C. §§ 7401–7642. Under the authority conferred by that legislation, the federal Environmental Protection Agency (EPA) has established uniform national ambient air quality standards for six pollutants.[1] These standards set limits on the amount of each pollutant in the air at levels which "allowing an adequate margin of safety, are requisite to protect the public health." 42 U.S.C. § 7409(b)(1). Under the federal statute, ambient air quality standards must be attained in each "air quality control region." 42 U.S.C. § 7407. These regions are designated by the EPA and may include portions of two or more states. *Id.* There are six control regions in Maryland, two of which are involved in this case: the Maryland portion of the National Capital Interstate Air Quality Control Region (compromised of Montgomery and Prince George's Counties, the District of Columbia, and its Northern Virginia Suburbs), 40 C.F.R. § 81.12 (1983), and the Metropolitan Baltimore Intrastate Air Quality Control Region (consisting of Baltimore City and Anne Arundel, Baltimore, Carroll, Harford and Howard Counties), 40 C.F.R. § 81.28 (1983).[2]

---

1. The pollutants are sulfur oxides, carbon monoxide, ozone, particulate matter, nitrogen dioxide and lead. 40 C.F.R. §§ 50.4–.12 (1983).

2. The other regions within the State are: the Cumberland-Keyser Intrastate Air Quality Control Region (Allegany, Garrett and Washington Counties); the Central Maryland Intrastate Air Quality Control Region (Frederick County); the Southern Maryland Intrastate Air

Each state is made responsible for ensuring that the ambient standards are met by the deadlines prescribed in the Clean Air Act in each air quality control region within its borders. Each state must prepare a State Implementation Plan (SIP) for achieving these standards. 42 U.S.C. § 7410. Any region failing to meet the standards by the end of 1975 is classified as a "non-attainment area." The 1977 amendments to the Clean Air Act required states with nonattainment areas to submit SIPs by January 1, 1979 and mandated that all ambient air quality standards be achieved by the beginning of 1983. 42 U.S.C. § 7502(a)(1). However, states may obtain a five-year extension of the deadline for attainment of the ozone and carbon monoxide standards. 42 U.S.C. § 7502(b)(11). The principal source for both pollutants is vehicle exhaust. 1 F. Grad, *Treatise on Environmental Law* § 2.01[2] at 2–6—2–7 (1983). Therefore, as a condition for receiving an extension, the state's SIP must establish a specific schedule for implementation of a vehicle emission control inspection and maintenance program. 42 U.S.C. § 7502(b)(11)(B). Through annual inspection and maintenance of federally mandated pollution control equipment, it is possible to limit vehicle emissions to the levels required of all new vehicles sold in the United States.[3]

Both the State and the EPA have identified the Baltimore and National Capital Air Quality Control Regions as nonattainment areas for ozone and carbon monoxide. 40 C.F.R. § 81.321. Therefore, Maryland was required to submit a SIP in January, 1979 calculated to achieve the ambient standards by the 1988 deadline and to implement a vehicle emissions inspection program, as required by 42 U.S.C. § 7502(b). Failure to comply with the SIP requirements

---

Quality Control Region (Charles, St. Mary's and Calvert Counties); and the Eastern Shore Intrastate Air Quality Control Region (Cecil, Kent, Queen Anne's, Talbot, Caroline, Dorchester, Wicomico, Somerset and Worcester Counties). See 40 C.F.R., Part 81, Subpart B (1983).

**3.** The emissions standards that *all* new vehicles are required to meet are set forth at 42 U.S.C. §§ 7521–51.

could lead to severe federal sanctions. Specifically, continued nonattainment could precipitate the loss of sewage treatment plant construction grants, 42 U.S.C. § 7616 and federal highway construction funds, 42 U.S.C. § 7506(a). The annual loss to the State has been conservatively estimated to be as much as $123 million.

Accordingly, the Maryland legislature authorized the Motor Vehicle Administration (MVA) of the Department of Transportation to adopt rules and regulations establishing an emissions inspection program. Maryland Code (1984 Repl.Vol.) §§ 23–201—23–208 of the Transportation Article. Pursuant to § 23–207(b) of the Transportation Article, the Department of Health and Mental Hygiene adopted the exhaust emission standards necessary to help bring the State's nonattainment areas into compliance with the national ambient air quality standards set by the EPA. COMAR § 10.18.22.03.[4] Limits were set for carbon monoxide, as well as for hydrocarbons, because the latter, when combined with other chemicals in the air and subjected to sunlight, produce the pollutant ozone. Ozone, together with other photochemical oxidants, create smog. 1 F. Grad, *Treatise on Environmental Law, supra,* at § 2.01[2]. The regulations of the Department of Health and Mental Hygiene also govern the procedures for inspecting vehicle exhaust emissions, provide specifications for the inspection testing equipment and prescribe methods for calibrating the devices. COMAR §§ 10.18.22.01–.06.

Regulations setting forth the administration of the VEIP are found at COMAR §§ 11.14.06.01–.16. With the exception of the classes of vehicles exempted by § 11.14.06.05, all motor vehicles registered to residents of counties in the Baltimore and National Capital Air Quality Control Regions

---

**4.** The VEIP regulations in titles 10 and 11 of COMAR have been amended since the latest version of that code was published. For the sake of simplicity, we will refer only to the COMAR regulation as amended in the Maryland Register. For the text of the amendments, see 10 Md.Reg. 1786–1787 (1983), 10 Md.Reg. 1691 (1983) and 10 Md.Reg. 2190 (1983).

must be inspected annually. Each vehicle is assigned a month in 1984 when it must be submitted for inspection. Upon receiving notification from the MVA, the owner must take the vehicle to one of ten official inspection stations located in the area. COMAR § 11.14.06.06B. These stations are operated by a private firm under contract with the MVA and are subject to the MVA's direct supervision. The initial inspection costs nine dollars. Transportation Article § 23–205(a)(1). If the vehicle passes, it receives a Certificate of Compliance. Vehicles that fail receive a Certificate of Noncompliance and the owner is given thirty days to make necessary repairs. COMAR § 11.14.06.08C(4). The vehicle must be reinspected within that period; there is no charge for the second inspection.[5] COMAR §§ 11.14.06.-08C(4) and .15A(3). If the vehicle fails upon retesting, the owner must either bring its emissions within the prescribed limits or obtain a waiver. COMAR § 11.14.06.08C(5). To obtain a Waiver Certificate, the owner must present proof that up to $50 was spent on a "low emissions tune-up" as defined in COMAR § 11.14.06.08D(4). The cost of a low emissions tune-up allegedly ranges from $26 to $35. Failure to comply with VEIP can result in suspension of the registration of the noncomplying vehicle. COMAR § 11.14.-06.16B.

The inspection program was scheduled to begin on January 1, 1983, but its commencement was delayed by the legislature for one year. *See* ch. 492 of the Acts of 1982; ch. 312 of the Acts of 1983. In response, the EPA threatened to withhold federal funds. 48 Fed.Reg. 5049 (Feb. 3, 1983). Though no final action was taken on the EPA proposal, federal pressure has continued. *See* 48 Fed.Reg. 35318 (Aug. 3, 1983). Delays involved in constructing the inspection stations required postponement of the program until February 1, 1984.

---

**5.** The owner need not have the vehicle retested if a waiver is obtained by getting a "low emissions tune-up" within the 30-day period. COMAR § 11.14.06.08D(1)(a).

## II.

On January 11, 1984, the County Commissioners of Carroll County, in their individual and official capacities, the Town of Mt. Airy, its mayor, and a resident of Carroll County (the appellees) filed a petition for a declaratory judgment and an interlocutory injunction in the Circuit Court for Carroll County; they sought to have the VEIP declared unconstitutional, as applied to Carroll County, and to enjoin its implementation. Named as defendants were the Department of Health and Mental Hygiene, the Department of Transportation and the MVA (the State). A hearing was held on January 23, 1984 before Judge Donald J. Gilmore at which evidence was introduced by both sides. On January 31, 1984, the court, following an oral opinion, granted an interlocutory injunction enjoining enforcement of the VEIP in Carroll County. The State noted its appeal on the same day and sought a stay of the injunction. We granted certiorari prior to consideration of the appeal by the Court of Special Appeals. After a hearing. we stayed the interlocutory injunction pending resolution of the appeal.

## III.

The scope of our review in this case is limited since we do not now finally determine the merits of appellees' arguments. Instead, we merely review whether the lower court's decision granting the interlocutory injunction should be vacated.

 As a general rule, the appropriateness of granting an interlocutory injunction is determined by examining four factors: (1) the likelihood that the plaintiff will succeed on the merits; (2) the "balance of convenience" determined by whether greater injury would be done to the defendant by granting the injunction than would result from its refusal;[6]

---

6. We indicated in *State Dep't v. Baltimore County,* 281 Md. 548, 557, 383 A.2d 51 (1977), that this factor normally will not be considered in

(3) whether the plaintiff will suffer irreparable injury unless the injunction is granted; and (4) the public interest. *State Dep't v. Baltimore County*, 281 Md. 548, 554–57, 383 A.2d 51 (1977).

> "[I]f the facts as stated in the bill of complaint or, when appropriate, as shown by the evidence, are not 'full and sufficiently definite and clear, in support of the right asserted, and that such right has been violated,' the court will not order preliminary relief."

*Id.* at 554, 383 A.2d 51 *quoting from Baltimore v. Warren Manuf. Co.*, 59 Md. 96, 105 (1882). It is well accepted that an interlocutory injunction should not be granted unless the party seeking it demonstrates a likelihood of success on the merits. 1 *High on Injunctions* § 5 (3d ed. 1905); 43 C.J.S. *Injunctions* §§ 17 and 20 (1978).

Viewing all the evidence in a light most favorable to the appellees, *see Rose v. Bevan*, 10 Md. 466, 470 (1857), we nevertheless conclude that the appellees have little chance of prevailing on the merits of their various claims. We need not, therefore, address the other test factors set forth in the *Baltimore County* case. Accordingly, we shall vacate the interlocutory injunction.

A. Fourth Amendment

The lower court found that the VEIP raised a "serious Fourth Amendment question," because it provides the MVA with authority to conduct warrantless searches of the vehicles tested. The court appears to have been concerned about the tailpipe tests as well as the examination of federally mandated pollution control equipment for evidence of tampering.

The heart of VEIP resides in the analysis of exhaust gasses emitted from the tailpipe of each car tested. The

---

a dispute between two governmental parties. Since both parties are acting on behalf of the public, consideration of the comparative hardship to each side is not relevant; the only interest to be considered is the public interest.

testing procedures call for inserting the testing probe at least ten inches into the tailpipe of the vehicle while it is idling. COMAR § 10.18.22.04B(1)(b). Readings are taken over a period lasting about two minutes.

We find no fourth amendment violations in these procedures. It is well accepted that an individual has no expectation of privacy in items that he knowingly exposes to the public. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Venner v. State,* 279 Md. 47, 367 A.2d 949, *cert. denied,* 431 U.S. 932, 97 S.Ct. 2638, 53 L.Ed.2d 248 (1977). Examination of the exterior of an automobile does not infringe any privacy interest protected by the fourth amendment. *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). In *State v. Burns,* 121 Ariz. 471, 591 P.2d 563 (Ct.App.1979), the Court of Appeals of Arizona held that that state's vehicle emission testing program did not violate the fourth amendment. *See also Conner v. State,* 34 Md.App. 124, 366 A.2d 385 (1976) (individual has no expectation of privacy in the serial numbers stamped on the outside of a motorcycle and visible upon cursory inspection). We think it unlikely that vehicle owners have a reasonable expectation of privacy in the exhaust gases located ten inches from the end of their exhaust systems. We conclude that insertion of the analyzer probe into the vehicle's tailpipe does not constitute a "search and seizure" within the meaning of the fourth amendment.

The lower court also indicated that § 23–202(d)(2) of the Transportation Article violated the fourth amendment by permitting warrantless searches of vehicles in connection with granting a waiver. That provision states that

"[n]otwithstanding the provisions of this section, [the MVA] may not grant a waiver if it is found in the testing process that a factory-installed emissions device has been tampered with or removed, or that the vehicle has been misfueled."

No evidence is presented in the record to indicate that this section is enforced through physical inspections of vehicles. To the contrary, there is uncontroverted evidence that the MVA does not intend to examine the pollution control equipment on the vehicles tested. Therefore, nothing in the record or in § 23–202(d)(2) raises the specter of an unreasonable fourth amendment search.

But even if the State did conduct a superficial inspection of these devices, our conclusion would not be different. Assuming, without deciding, that getting under the vehicle to examine the catalytic converter or looking under the hood at other pollution control devices would constitute a fourth amendment search, it would not necessarily invalidate the VEIP. On its face, the fourth amendment does not prohibit all searches and seizures; it only forbids those which are unreasonable. Its essential purpose is to safeguard the privacy and security of individuals against arbitrary invasions by limiting the discretionary authority of government officials. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

> "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 654, 99 S.Ct. at 1396 (footnote omitted).

Obviously, the purported invasion of privacy caused by looking under the hood, beneath the car or behind the gas cap is far outweighed by the overwhelming and overriding governmental interest in providing cleaner air. *State v. Burns, supra*, 121 Ariz. 471, 591 P.2d at 566–67. Furthermore, any search of this nature would likely be deemed consensual. No Maryland resident is forced to have his vehicle inspected; the penalty for noncompliance is a loss of the right to drive that vehicle. The VEIP does not affect a citizen's right to drive any other vehicle or to seek alternative means of transportation. It is well accepted, as stated in *Burns*, 121 Ariz. 471, 591 P.2d at 566, that "consent to minimal intrusions may be required by the state as a

prerequisite to use of regulated means of travel." See also *United States v. Edwards,* 498 F.2d 496 (2d Cir.1974), and Annot., 14 A.L.R.Fed. 286 (1973), and cases there cited, upholding the constitutionality of requiring airline passengers to submit to preflight searches of their persons and baggage as a condition to boarding the aircraft.

In conclusion, nothing in the VEIP appears likely to violate the fourth amendment. Therefore, the trial court erred in finding that appellees would likely prevail at trial on this issue.

B. Equal Protection

Appellees contend that certain classifications contained in the statutes and regulations at issue violate the equal protection principles embodied in the state and federal constitutions.[7] First, appellees argue that inclusion of Carroll County in the Metropolitan Baltimore Intrastate Air Quality Control Region is arbitrary and without rational basis. They reason that Carroll County is principally a rural area with no major pollution problems. They argue that other similarly situated rural counties such as Frederick and Cecil Counties are not part of the VEIP. Therefore, the appellees contend, there is no rational reason for subjecting Carroll County residents to the program. The lower court found, and we agree, that appellees enjoy little possibility of success on this point.

Uniformity of treatment throughout the State is not a prerequisite to satisfying the requirements of the equal protection clause. *Washabaugh v. Washabaugh,* 285 Md. 393, 407, 404 A.2d 1027 (1979). A statute enacted

---

7. The fourteenth amendment to the federal constitution prohibits any state from denying "to any person within its jurisdiction the equal protection of the laws." Although the Maryland Constitution does not contain an express equal protection clause, that principle is embodied in Article 24 of the Declaration of Rights. *State v. Good Samaritan Hospital,* 299 Md. 310, 326 n. 7, 473 A.2d 892 (1984); *Hornbeck v. Somerset Co. Bd. of Educ.,* 295 Md. 597, 616, 458 A.2d 758 (1983).

pursuant to the State's police power is not invalid merely because it affects counties unequally. *E.g., McGowan v. Maryland,* 366 U.S. 420, 427, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *Supermarkets Gen. Corp. v. State,* 286 Md. 611, 621, 409 A.2d 250 (1979), *appeal dismissed,* 449 U.S. 801, 101 S.Ct. 45, 66 L.Ed.2d 5 (1980); *Matter of Trader,* 272 Md. 364, 383, 325 A.2d 398 (1974). In reviewing statutory distinctions based on territory, the rational basis test applies because no fundamental right or suspect class is affected. *Washabaugh, supra,* 285 Md. at 407, 404 A.2d 1027; *Donnelly Adv. Corp. v. City of Balto.,* 279 Md. 660, 370 A.2d 1127 (1977). Under the rational basis test, a statutory classification enjoys a strong presumption of constitutionality; the party attacking it must show by clear and convincing evidence that it does not rest upon any rational basis but is essentially arbitrary. *E.g., Hornbeck v. Somerset Co. Bd. of Educ.,* 295 Md. 597, 656–57, 458 A.2d 758 (1983). Viewing all of the evidence in a light most favorable to the appellees, we find that a rational basis for the territorial distinctions drawn here exists. Carroll County is a nonattainment area for ozone. Therefore, the State clearly had a rational reason for including the County in the VEIP, *i.e.,* to bring it within the federally prescribed limits for that pollutant. That other "rural" counties in the area have been excluded is completely irrelevant. Underinclusiveness does not create an equal protection violation under the rational basis test. Equal protection principles do not require the State to attack all of the various aspects of a problem at once; the government may legislate to remedy one phase of a problem and leave other phases to be resolved later. *Bowie Inn v. City of Bowie,* 274 Md. 230, 241, 335 A.2d 679 (1975). *See also Dandridge v. Williams,* 397 U.S. 471, 486–87, 90 S.Ct. 1153, 1162–1163, 25 L.Ed.2d 491 (1970); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); *Montgomery Co. v. Fields Road,* 282 Md. 575, 386 A.2d 344 (1978) (a legislative body may weigh relative needs and restrict the application of a legislative policy to less than the entire field).

When the State moves to correct an evil, it need not correct all of the evil at once; rather, it may proceed step by step. *Montgomery Co. v. Fields Road, supra,* 282 Md. at 581, 386 A.2d 344.

"If the classification made by the Legislature is otherwise justified, there can be no sound complaint that the legislative purpose might be better or more fully achieved by other or more expansive and inclusive classification." *Harden v. Mass Transit Adm.,* 277 Md. 399, 414, 354 A.2d 817 (1976), *quoting Allied American Co. v. Comm'r.,* 219 Md. 607, 624, 150 A.2d 421 (1959). Consequently, the VEIP is not constitutionally infirm because it does not require emissions testing in other rural counties.[8]

■■■ Appellees' second line of attack is directed at the exemptions provided in COMAR § 11.14.06.05. This provision grants exemptions to nine classes of vehicles otherwise covered by the VEIP. Appellees contend that the creation of these distinctions violates the equal protection clause. They suggest that the appropriate standard for reviewing these exemptions is the "heightened scrutiny" test set forth in *Attorney General v. Waldron,* 289 Md. 683, 426 A.2d 929 (1981). There, we held that where a statute creates a "sensitive," though not "suspect" criteria of classification, affects "important," though not fundamental personal rights or works a "significant interference" with a liberty or benefit vital to the individual, the courts will apply a standard more exacting than the rational basis test but less rigorous than the strict scrutiny analysis. *Id.* at 711–714, 426 A.2d 929. *See also Hornbeck, supra,* 295 Md. at 641–42, 458 A.2d 758. We think it plain that the impact of the VEIP does not implicate the *Waldron* standard of review. Clearly, none of the classifications created by the regulations are based on "sensitive" criteria like gender.

---

8. Furthermore, it should be noted that the only air quality control regions which are nonattainment areas for the vehicular pollutants (ozone and carbon monoxide) are the ones covered by the VEIP. Neither Cecil County nor Frederick County is located in a nonattainment area. 40 C.F.R. § 81.321 (1983).

*Waldron, supra,* 289 Md. at 711, 426 A.2d 929; *Hornbeck, supra,* 295 Md. at 641, 458 A.2d 758. Nor does the VEIP affect an "important" personal right or "significantly interfere" with a vital liberty. It is true that the Supreme Court has recognized the importance of a citizen's right to travel between states. *E.g., Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); L. Tribe, *American Constitutional Law,* § 16–8 (1978). However, the VEIP does not significantly impair that right. It does not prohibit or penalize interstate travel. Nor does it take away an individual's right to drive. Instead, it merely precludes an owner from driving a particular vehicle if that vehicle does not comply with emissions standards and if the owner refuses to repair it. This is not the type of deprivation to which the *Waldron* heightened scrutiny standard applies; rather, it is the type of regulation to which the rational basis test is applied.

As we indicated earlier, regulations which do not make distinctions based on suspect classifications or impair the exercise of fundamental rights are presumed to be constitutional. They will be upheld unless the party challenging them proves they have no rational basis. They will be sustained if any state of facts reasonably may be conceived to sustain them. *See, e.g., Hornbeck, supra,* 295 Md. at 642, 458 A.2d 758.

The State has demonstrated in the record a rational basis for each of the exemptions provided for in the VEIP. We consider them seriatim. Farm vehicles are exempt, COMAR § 11.14.06.05B(1), because they travel very few miles and add little to the pollution problem. Historic and antique vehicles receive an exemption, COMAR § 11.14.06.-05B(2), because they are only driven on weekends and thus are responsible for only a minor portion of the total vehicle emissions. Gasoline powered trucks and buses with a gross vehicle weight greater than ten thousand pounds are not covered by the VEIP, COMAR § 11.14.06.05B(3), because of

the unquantified emissions reduction potential of these heavy duty trucks and buses as well as anticipated "start-up problems" associated with the commencement of inspections. With this in mind, the EPA suggested that heavy duty vehicles be exempt from the program initially. Maryland inspection stations have been constructed with at least one inspection bay large enough to accommodate these larger vehicles; thus, they may be added to the program later if it becomes feasible. Motorcycles are excused from the program, COMAR § 11.14.06.05B(4), because special equipment is needed to test them and because they travel relatively few vehicle miles; thus it would not be cost-effective to include them in the program. The program also exempts specially registered vehicles owned temporarily by vehicle dealers, finance companies and others. COMAR § 11.14.06.05B(5). These vehicles are specially registered for limited transportation purposes and will be subject to inspection once they are transferred permanently. Section 11.14.06.05B(6) excepts vehicles registered in Maryland but not driven within the State. It is designed to cover vehicles owned by members of the armed services. Obviously, these vehicles do not emit pollutants in Maryland and thus there is no reason to force owners to have them inspected. If a vehicle covered by subsection B(6) is returned to the State, however, it is subject to inspection. All diesel and alternate fuel powered vehicles are exempt, COMAR § 11.14.06.-05B(7). The record shows that diesel engines do not deteriorate over time and therefore inspection and maintenance would not reduce emissions. Furthermore, special equipment would be needed to test diesel powered vehicles, increasing the cost of the program significantly without an appreciable reduction in emissions. Vehicles that run on electricity, propane, compressed natural gas, or other alternative fuels emit very small amounts of each pollutant and some are pollution free. Vehicles more than twelve years old are exempt under COMAR § 11.14.06.05B(9). The State found that these older vehicles are driven less than others and that the percentage reduction in emissions to be gained

by inspection and maintenance was minor compared with the cost to the owner, most of whom are from low income groups. Finally, vehicles less than twelve months old are exempt. COMAR § 11.14.06.05B(10). States are prohibited by 42 U.S.C. § 7543(a) from requiring inspections as a condition of initial registration. For the twelve months after initial registration, the MVA could reasonably have determined that noncompliance was unlikely because a new engine will not deteriorate significantly below federal new vehicle emissions standards during that time. We conclude, therefore, that a rational basis for each of these exemptions appears to exist.

Appellees argue that § 11.14.06.05 exempts major emissions sources and that inclusion of these vehicles in the program would achieve additional reductions. As we said earlier, however, underinclusiveness does not render an otherwise valid law unconstitutional. The legislature may direct that pollution from vehicle emissions be reduced incrementally, as long as a rational reason exists for excluding the vehicles that it does not choose to regulate. We need not be convinced that the reasons for the distinctions are good ones; that is a question for the legislature. Rather, we need only find that there is some rational relationship between the legislature's goal and the means chosen to achieve it. In *Hornbeck, supra,* 295 Md. at 658, 458 A.2d 758, we said, in another context:

> "[W]e approach these issues with 'a disciplined perception of the proper role of the courts . . . .' [*Quoting Board of Educ., Levittown, Etc. v. Nyquist,* 57 N.Y.2d 27, 439 N.E.2d 359, 369 n. 9, 453 N.Y.S.2d 643 (654 n. 9) (1982).] The expostulations of those urging alleviation of the existing disparities are properly to be addressed to the legislature for its consideration and weighing . . . . Otherwise stated, it is not within the power or province of members of the Judiciary to advance their own personal wishes or to implement their own personal notions of fairness under the guise of constitutional interpretation."

Accordingly, we find that appellees' factual allegations, even if true, are not likely to present a violation of the equal protection clause.

C. Procedural Due Process

The lower court found that a number of the VEIP procedures, as prescribed by the governing statutes and regulations, raised substantial due process questions. Specifically, the court was concerned about the procedure for appealing a finding that a vehicle had failed the inspection, the procedure for appealing a revocation of vehicle registration, and the perceived failure to preserve a record of the inspection results for each vehicle tested. No allegation was made by any of the appellees that any of their vehicles had failed the test or that their vehicle registrations were revoked. Therefore, our review of the VEIP is limited to its facial validity.

We note at the outset that the court erroneously interpreted § 11.14.06.16B of the regulations to preclude an owner from driving his vehicle "from day one of the regulation" unless he had passed the emissions inspection. In other words, the court found that on February 1, 1984, the sanctions of the VEIP applied automatically to all vehicle owners, even those who had not yet received a notice from the MVA to submit their vehicles for inspection. Section 11.14.06.16B provides:

"B. A person may not operate a Maryland registered motor vehicle that is required to be inspected under these regulations on the highways of this State unless the vehicle has a valid inspection certificate. The Administration may suspend, revoke or refuse to renew registration of any vehicle whose owner fails to comply with the requirements of this chapter."

This provision must be interpreted in light of § 11.14.06.06B which establishes the schedule for implementing the VEIP. It states:

"(1) Before the beginning of the mandatory program, each vehicle required to be inspected shall be assigned a

specific month, during which the vehicle is to be inspected during the first year. No vehicle may be tested prior to December 31, 1983.

(2) A vehicle may not be presented for inspection more than 30 days before the assigned month of inspection. Vehicles tested before the assigned month shall be issued a certificate containing an expiration designation for the assigned month in the succeeding year."

Thus, the regulations implementing the VEIP clearly provide for annual inspections to be conducted in the month assigned to a driver. The enforcement mechanisms established in § 11.14.06.07 do not apply to an individual who has not yet been assigned a month in which to have his vehicle inspected.

The lower court found no "requirement that any record be made of ... a vehicle emissions inspector's findings." In fact, however, the regulations explicitly require that all emissions test results be set forth on the certificate, whether it be "compliance," "noncompliance" or "waiver." [9] There is nothing in the record to suggest that these requirements will not be obeyed.

The lower court also found that the procedures provided by the VEIP for appealing an adverse inspection result, or a revocation or nonrenewal of registration, violated due process. The standards for determining whether a particular procedure comports with due process are well known. The due process clauses of Article 24 of the Maryland Declaration of Rights and the fourteenth amendment to the federal constitution have the same meaning; and we have said that

---

**9.** COMAR § 11.14.06.08C provides in pertinent part:
"C. Issuance of Certificates.
(1) A vehicle that is inspected shall be issued a certificate by either the official inspection station, fleet inspection station, or VEIP Representative.
(2) The certificate will contain the following information:
* * * * * *
(f) HC and CO results;
(g) Applicable emission standards."

Supreme Court interpretations of the federal provision are authority for interpretation of Article 24. *Pitsenberger v. Pitsenberger*, 287 Md. 20, 27, 410 A.2d 1052 (1980), *appeal dismissed*, 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10 (1980).

To establish a violation of procedural due process of law in this case, the aggrieved party must show that state action has resulted in a deprivation of a property interest within the meaning of the due process clause. Once deprivation of a property interest is demonstrated, the court must ascertain what procedures are constitutionally required before an individual may be deprived of a protected property interest. *E.g., Pitsenberger, supra,* 287 Md. at 27–28, 410 A.2d 1052; *Riger v. L & B Ltd. Partnership,* 278 Md. 281, 288–89, 363 A.2d 481 (1976). Due process does not require adherence to any particular procedure. On the contrary, due process is flexible and calls only for such procedural protections as the particular situation demands. *E.g., Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Attorney Grievance Comm'n v. Reamer,* 281 Md. 323, 333, 379 A.2d 171 (1977). Procedures adequate under one set of facts may not be sufficient in a different situation. *Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 1645, 40 L.Ed.2d 15 (1974). Therefore, determination of what is required must be made by balancing the private and government interests affected. *Mathews, supra,* 424 U.S. at 334, 96 S.Ct. at 902. In that case, the Supreme Court set forth the appropriate factors:

"[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the

additional or substitute procedural requirement would entail." 424 U.S. at 334–35, 96 S.Ct. at 903.

*Accord Reamer, supra,* 281 Md. at 333, 379 A.2d 171.

■ The lower court indicated that the VEIP provides inadequate procedures for appealing a negative determination of compliance made at the testing station. We disagree. If a vehicle fails the inspection, a noncompliance certificate is issued. No penalty or sanction is then imposed on the owner of a vehicle that fails. Since there is no sanction, the owner is not deprived of any property interest and thus the due process clause is not implicated.[10]

The lower court also found that the procedures to be followed prior to revocation of vehicle registration for noncompliance were inadequate. The requirements of the VEIP are enforced by suspension of vehicle registration or denial of registration renewal. COMAR § 11.14.06.07A. The MVA is given such authority by § 13–705 of the Transportation Article. A vehicle owner may have his registration suspended if (1) he fails to submit his vehicle for testing upon receiving notice to do so, COMAR § 11.14.-06.16B; (2) the vehicle fails the first inspection and is not submitted for a retest within the required time, COMAR § 11.14.06.08C(4); or (3) the vehicle fails both inspections and is not granted a waiver, COMAR § 11.14.06.08C(5). The undisputed testimony in the record indicates that a vehicle owner who fails to comply with the VEIP requirements will be sent a notice that the vehicle's registration will be suspended unless, within thirty days, evidence is submitted to the MVA that (1) the vehicle has complied or received a waiver or exemption; (2) the vehicle has been sold; or (3) the owner no longer resides in an area subject to regulation under the program. If the owner does not

---

**10.** Though not constitutionally required to do so, the MVA does provide an avenue of redress from a determination that a vehicle failed inspection. COMAR § 11.14.06.09C(2)(d) requires that a VEIP representative be present at all inspection stations to investigate and resolve disputes arising from the operation of the program.

comply with the first notice, another notice is sent that the vehicle's registration has been suspended and ordering that the license tags be surrendered. The owner has a right to appeal the suspension or revocation of registration to the circuit court pursuant to § 13–705(b)(1) of the Transportation Article which provides:

> "(b) *Right of appeal.*—A suspension or revocation under this section is subject to the right of appeal as follows:
>
> (1) By a resident to the circuit court for the county in which the individual resides or has a principal place of business."

The appeal must be filed within thirty days, as provided by Maryland Rule B4.

■■ A driver's license is a property interest protected by the fourteenth amendment. *Illinois v. Batchelder,* —— U.S. ——, ——, 103 S.Ct. 3513, 3515, 77 L.Ed.2d 1267 (1983); *Mackey v. Montrym,* 443 U.S. 1, 10, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979); *Dixon v. Love,* 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977); *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). We assume, without deciding, that a vehicle registration is also a property interest within the meaning of that provision. *See Rentals Unlimited v. Administrator,* 286 Md. 104, 111–12, 405 A.2d 744 (1979) (the right to drive and to register vehicles involves important interests which cannot be taken away without procedural due process). Revocation or denial of registration renewal would appear to constitute a deprivation of that interest within the contemplation of traditional due process analysis. Under the standard enunciated in *Mathews, supra,* however, we think adequate procedural safeguards are provided. Therefore, on its face, the VEIP does not violate due process.

Under the *Mathews* standard, we must first examine the nature of the private interest affected. The driver's interest in continued possession of his driver's license is a substantial one. *Mackey, supra,* 443 U.S. at 11, 99 S.Ct. at

2617. Without it he is not permitted to operate any vehicle. A driver's interest in registration of a vehicle, however, is less significant. The suspension of registration merely precludes the driver from operating *that* vehicle; he is free to use any other vehicle that he might buy, rent or borrow. Owners are given ample notice of noncompliance and sufficient opportunity to remedy the situation prior to suspension of registration. Furthermore, though not required to, *Mackey, supra,* 443 U.S. at 12, 99 S.Ct. at 2618, the MVA is authorized to grant extensions of time to waiver applicants who can show hardship. COMAR § 11.14.06.08D(7) and (8). Therefore, since the interests involved here are less significant than those addressed in *Batchelder, Mackey* and *Love,* all *supra,* it is clear that no presuspension appeal procedure would be warranted on this factor.

The second *Mathews* consideration is addressed to the risk of an erroneous determination under the procedures provided and the benefits to be gained from the substitution of alternative procedures. Where, as here, suspension decisions are largely automatic as based upon scientifically accepted objective criteria, and prompt post-suspension judicial review is available, the likelihood of erroneous administrative determinations is minimal. *See Love, supra,* 431 U.S. at 113–14, 97 S.Ct. at 1727–1728. Consequently, little is to be gained from provision of additional procedures.

Finally, we consider the government's interest and the administrative and fiscal burdens created by additional procedures. Of course, the State's interest in eliminating pollution to protect the health of its citizens is of obvious importance. Suspension of registration provides the most effective means of achieving this purpose by removing the polluting vehicles from the roads. *See Mackey, supra,* 433 U.S. at 18, 99 S.Ct. at 2621; *Love, supra,* 431 U.S. at 114–15, 97 S.Ct. at 1728–1729. Additionally, presuspension procedures would increase substantially the cost and administrative burden—which is borne by all taxpayers—while providing little more than a dilatory tactic in this scientific area for those who do not wish to have their vehicles

inspected. *See Mackey, supra,* 443 U.S. at 18, 99 S.Ct. at 2621.

██ We conclude that on its face, the VEIP provides adequate procedures to safeguard the interests of vehicle owners. Accordingly, appellees' chances of prevailing on their procedural due process claims are slim at best.

### D. Substantive Due Process and Unlawful Taking

The lower court found that the suspension or revocation of registration and removal of the license tags from a noncomplying vehicle constituted a taking of property without just compensation. As there is no evidence that any driver has had his registration revoked or his tags confiscated, our inquiry is limited to the facial validity of the VEIP.

██ Both the fifth amendment to the United States Constitution and Article III, § 40 of the Constitution of Maryland prohibit the taking of private property for public use unless just compensation is paid to the owner. The fifth amendment applies to the states through the fourteenth amendment. We have said that Supreme Court decisions interpreting the fifth amendment's just compensation requirement are practically direct authority for our interpretation of the parallel provision in the Constitution of Maryland. *King v. State Roads Comm'n of St. Hwy. Admin.,* 298 Md. 80, 83–84, 467 A.2d 1032 (1983). The standard for determining when a government regulation affecting the use of private property becomes a "taking" in the constitutional sense is well accepted.

> " 'If the owner affirmatively demonstrates that the legislature or administrative determination deprives him of all beneficial use of the property, the action will be held unconstitutional. But the restrictions imposed must be such that the property cannot be used for any reasonable purpose. It is not enough for the property owners to show that the ... action results in substantial loss or hardship.' "

*Governor v. Exxon Corp.,* 279 Md. 410, 437, 372 A.2d 237 (1977), *aff'd* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978), *quoting Baltimore City v. Borinsky,* 239 Md. 611, 622, 212 A.2d 508 (1965). *See also State v. Good Samaritan Hospital,* 299 Md. 310, 321, 473 A.2d 892 (1984); *Cider Barrel Mobile Home v. Eader,* 287 Md. 571, 580, 414 A.2d 1246 (1980); *Pitsenberger v. Pitsenberger,* 287 Md. 20, 34, 410 A.2d 1052 (1980), *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10 (1980); *Rockville v. Stone,* 271 Md. 655, 663–64, 319 A.2d 536 (1974).

■■ If the registration of a vehicle is suspended or revoked because it has not acquired a Certificate of Compliance or Waiver, the owner is required to return the registration plates and card to the MVA. Transportation Article, § 13–708. This is not an unlawful taking of property in the constitutional sense.

■■ Nor does suspension, revocation or refusal to renew vehicle registration constitute a taking of the vehicle. Section 13–709 of the Transportation Article makes clear that

"[t]he cancellation, suspension, or revocation of the registration of a vehicle does not affect the status of the title to or any property rights in the vehicle."

If the registration is invalid, the owner may not drive the vehicle. But the owner is not thereby deprived of "all beneficial use" of the vehicle; it may be sold. It is true that the MVA may require an emissions inspection certificate as a condition for transferring title to the vehicle, COMAR § 11.14.06.07F, or furnishing registration to the new owner, COMAR § 11.14.06.07D. Presumably this might reduce the value of the automobile to the new owner who would be required to make the expenditures necessary to bring the vehicle into compliance with the emissions standards. As it is, the purchaser of a used vehicle is also required to obtain a safety inspection certificate, Transportation Article § 23–107. These requirements may reduce

the price that the seller can obtain for the vehicle. A reduction in value, however, does not per se constitute a taking. *E.g., Andrus v. Allard,* 444 U.S. 51, 64–66, 100 S.Ct. 318, 326–327, 62 L.Ed.2d 210 (1979); *Md.-Nat'l Cap. P. & P. Comm'n v. Chadwick,* 286 Md. 1, 405 A.2d 241 (1979). Therefore, we find that suspension or revocation of vehicle registration under the VEIP does not effect a taking in violation of either the state or the federal constitution.

Appellees also urged the court below to find that the VEIP regulations exceeded the State's police power in violation of other substantive due process considerations. It appears from the lower court's oral opinion that it may have believed that the VEIP did not, as to the citizens of Carroll County, bear a real and substantial relation to the public end sought to be accomplished and was therefore arbitrary and unreasonable. Of course, where, as here, legislation is sustainable under the equal protection rational basis standard, a substantive due process challenge to the same law is unlikely to succeed. The standards are the same. As we said in *Supermarkets Gen. Corp. v. State,* 286 Md. 611, 618, 409 A.2d 250 (1970), *appeal dismissed,* 449 U.S. 801, 101 S.Ct. 45, 66 L.Ed.2d 5 (1980):

> "[T]he companion contentions of equal protection and due process mesh. There is no practical distinction between the grounds on which the two contentions are argued, and determination of one will resolve the other."

Moreover, it would not appear unreasonable to include Carroll County under VEIP simply because that county's relative contribution to emission reduction may constitute but a small fraction of the total air pollutants within the State. As the State pointed out in its brief, the plan is comprised of many measures, which individually may contribute only a little to the overall emission reductions. But it is the total plan which is important and each piece is vital to its effectiveness. The record discloses that in the Baltimore Region, even with VEIP in place, Maryland will have a nine ton per day shortfall in the emission reduction required to be achieved by 1987. At present, Maryland

does not have any proposed regulations that will achieve this reduction. Thus, it is hard to fault the State's contention that when it is searching for new ways to obtain additional emission reductions, it would be irresponsible to eliminate the potential reductions gained by including Carroll County under the plan.

E. Administrative Law

The lower court expressed "constitutional concern" that the MVA had no power to amend its original VEIP regulations and, as a consequence, all subsequent amendments to the rules were adopted without legislative authority. From this, the appellees urge us to find that all amendments to the original VEIP regulations are void.

The procedure for adopting the regulations establishing the VEIP is set forth in §§ 23–202 and 23–207 of the Transportation Article. The MVA was ordered to publish proposed rules and regulations by October 1, 1979 and submit them to the General Assembly for consideration during the 1980 regular session. The proposed regulations were to take effect as provided, together with any amendments approved by joint resolution of the General Assembly. Transportation Article § 23–202(a). It is not alleged that there was failure of compliance with any of the procedures mandated by this section or by the Administrative Procedure Act (APA), Code (1957, 1982 Repl.Vol.) Article 41, §§ 9 and 244–256A. The MVA's authority to implement, administer and enforce the VEIP is set forth in § 23–207(a) of the Transportation Article.[11]

Though none of these provisions explicitly grant authority to the MVA to amend its regulations, we think it implicit that the authority to adopt rules carries with it the

---

11. Transportation Article, § 23–207(a) provides:

"The Administration may adopt rules and regulations as required for purposes of implementation, administration, regulation, and enforcement of the provisions of this subtitle, including rules and regulations that, consistent with federal law, exempt certain vehicles from the inspections under this subtitle."

power to amend the rules so adopted. In other words, an agency with expressly granted rulemaking power has implied authority to alter, amend and repeal the regulations it has adopted. *See* 1 Am.Jur.2d *Administrative Law* § 131 (1962); 73 C.J.S. *Public Administrative Law and Procedure* § 99 (1983); APA, §§ 244 and 245. Manifestly, to deny an agency the authority to amend its regulations, absent express statutory inhibition, would severely impair its effectiveness, and the legislature could not have intended such an absurd result. Since we do not read the legislation providing for the VEIP to preclude amendment of regulations adopted pursuant to its authority, appellees' likelihood of success on the merits of this argument is insubstantial.

We therefore conclude that the granting of the interlocutory injunction in this case constituted an improvident exercise of judicial discretion on the part of the trial judge.

INTERLOCUTORY INJUNCTION VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR CARROLL COUNTY FOR FURTHER PROCEEDINGS; COSTS TO ABIDE THE FINAL RESULT.