871 A.2d 639

**DMF LEASING, INC.**

v.

**BUDGET RENT–A–CAR OF MARYLAND, INC. et al.**

**No. 1842, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

April 4, 2005.

Geroge C. Shadoan (Gregg J. Steinbarth, on brief), Rockville, for appellant.

John F. Dienelt (Scott McIntosh, Charley C. Sung, on brief), Washington, DC, (David L. Jacobson, Blades & Rosenfeld, PA, on brief), Baltimore, for appellee.

Panel DAVIS, SALMON, ADKINS, JJ.

DAVIS, J.

Appellant, DMF Leasing, Inc. (DMF), sought a preliminary injunction prohibiting appellees, Budget Rent–A–Car of Maryland, Inc. (Maryland Budget) and Budget Rent–A–Car Sys-

tems, Inc. (National Budget), from taking action to terminate three of DMF"s Budget Rent–A–Car franchises in Maryland. The Circuit Court for Montgomery County denied DMF"s request for a preliminary injunction, and the court also denied a motion for injunction pending appeal. This Court subsequently granted appellant's motion for an injunction pending appeal.

DMF appeals from the circuit court's denial of the preliminary injunction, raising three questions, which we have rephrased and consolidated into one:

Did the circuit court err in denying DMF"s request for a preliminary injunction?

We hold that the circuit court erred in not granting the injunction, and, accordingly, we shall reverse the judgment.

## FACTUAL BACKGROUND

In 1960, National Budget entered into a master franchise agreement in Maryland, which ultimately was assumed by Maryland Budget. While they share similar names and have a longstanding close relationship, the companies are not affiliates of each other. National Budget was acquired in 2002 by Cendant Car Rental Group, Inc., which is also an appellee here.

Under the parties' agreement, Maryland Budget was granted the exclusive right to operate Budget Rent–A–Car franchises in the Washington–Baltimore region. Maryland Budget was also granted authority to contract sublicenses [1] for the use of the Budget Rent–A–Car name in Maryland. Under that authority, Maryland Budget entered into sublicense agreements with appellant, permitting appellant to operate Budget Rent–A–Car franchises in Catonsville, Rockville, and Silver Spring, Maryland.

Two of Maryland Budget's sublicense agreements with DMF expressly provided, in paragraph 1.05, that if National

---

1. We use the terms "sublicense" and "subfranchise" interchangeably in this opinion.

Budget's master agreement with Maryland Budget terminated, then DMF"s sublicense with Maryland Budget would terminate as well, unless National Budget exercised its right to continue the sublicense. Specifically, the paragraph states:

This Agreement and all rights appurtenant thereto shall be subject and subordinate to the underlying LICENSE AGREEMENT between LICENSOR [Maryland Budget] and [National Budget]. *In the event that LICENSOR's License Agreement with [National Budget ] terminates, this Agreement shall forthwith terminate; provided, however, that [National Budget ] shall have the right, but not the obligation, to keep this Agreement in full force and effect, by written notice delivered to Sublicense within seven (7) days subsequent to the termination of LICENSOR's said License Agreement.* In the event that [National Budget] exercises its said right to continue this Agreement in full force and effect, [National Budget] shall be substituted for LICENSOR hereunder, and [National Budget] shall have the further right and option to assign all of its rights hereunder to any person, and any such assignee shall become LICENSOR hereunder. No assignment or other affirmative action by LICENSOR or SUBLICENSEE [i.e., DMF] shall be required to effectuate the provisions of this paragraph.

This language was omitted from the Catonsville sublicense agreement, but National Budget contends that it was implied by law into the Catonsville agreement.

Obviously, DMF"s position as a subfranchisee left it vulnerable; if DMF"s licensor's rights were terminated, then National Budget could contend that DMF"s rights would terminate as well. DMF recognized this risk: John J. Fitzgerald, Jr., a principal of DMF, testified in a March 27, 2003 hearing that, "if they [Maryland Budget] lose their license, of course, we're an orphan, and we don't have any relationship with [National Budget].... [T]here's no protection for us at all." [2]

---

2. Fitzgerald's comments were made in the context of National Budget's impending bankruptcy, out of which Cendant purchased National Bud-

On August 15, 2002, DMF notified Maryland Budget that it did not intend to renew its subfranchise licenses with Maryland Budget. Maryland Budget contested DMF's claimed right not to renew; Maryland Budget threatened to terminate DMF's subfranchises on various grounds, and a termination (rather than nonrenewal) would trigger certain post-franchise noncompetition provisions in the parties' agreements. Maryland Budget notified DMF that its subfranchises were terminated on November 11, 2002.

DMF and Maryland Budget (but not National Budget) began litigating their dispute in the Circuit Court for Montgomery County. DMF and Maryland Budget reached a tentative settlement in May 2003. Although National Budget was not a party to the case, DMF knew that its approval was necessary before Maryland Budget could execute any settlement.

Meanwhile, also in 2003, National Budget was trying to purchase Maryland Budget. A manager with DMF, Glenn Price, was informed by Jeffrey Rellinger, of Maryland Budget, that Maryland Budget was selling itself to National Budget; that communication occurred prior to the final settlement between DMF and Maryland Budget. National Budget stipulated that it would not buy Maryland Budget until it settled its litigation with DMF. National Budget approved of the settlement DMF had drafted for its dispute with Maryland Budget.

That settlement was finally executed between appellant and Maryland Budget on June 4, 2004, and it states that it became effective May 28, 2004, when its material terms were announced in court. The executed agreement is entitled, "REVISIONS TO THE SUBLICENSE AGREEMENTS," and, among other provisions, the agreement states:

Each of the revised Sublicense Agreements has a term of five years and is renewable at DMF's election for successive

get. Fitzgerald's concern was that National Budget's agreement with Maryland Budget would not survive the bankruptcy proceeding, thus, as he described it, making DMF an "orphan."

periods of one year each. The one-year renewals may be terminated upon 90 days written notice by DMF.

DMF asserts that, based on this paragraph, it believed that it had eliminated its vulnerability to a termination of Maryland Budget's license for at least five years.

During the same month that the settlement agreement was executed, DMF filed the instant case in the Circuit Court for Montgomery County, seeking a temporary restraining order (TRO) at the outset to keep National Budget from acquiring Maryland Budget and terminating Maryland Budget's (and concomitantly, DMF's) licenses. The court held a hearing and denied the TRO request on June 30, 2004, but appellees agreed not to terminate DMF's subfranchises at least until after the October 1, 2004 hearing that the court scheduled.

At the October 1 hearing, the circuit court denied DMF's request for a preliminary injunction. Announcing his decision, the trial judge began:

[T]here are four factors that the Court should look at in deciding whether or not to issue a preliminary injunction and they are the likelihood that the petitioner will succeed on the merits; the balance of convenience determined by whether greater injury would be done to the defendant by granting the injunction than would result from its refusal; and whether the petitioner will suffer irreparable injury unless the injunction is granted.

Although the trial judge correctly identified that there are four salient factors, and identified three of them, he did not address the fourth, i.e., the public interest.

As for the three factors analyzed, the trial judge found that DMF had little likelihood of succeeding on the merits of its claims. The judge concluded that, under the agreements prior to DMF's settlement with Maryland Budget, National Budget retained the right to terminate DMF's subfranchises by terminating Maryland Budget's statewide license, and he found that DMF's settlement with Maryland Budget could not alter that right. The judge also found that, even if DMF's subfranchises were wrongfully terminated, money damages would compen-

sate DMF for the loss, so its prospective injury would not be irreparable. Although the judge concluded that the balance of convenience weighed in DMF"s favor, he denied the injunction.

On October 8, 2004, National Budget's counsel notified DMF that, as far as National Budget was concerned, DMF"s sublicenses had terminated after the trial judge denied the preliminary injunction. Also on October 8, DMF moved for an injunction pending appeal, which was denied on October 15. On October 22, 2004, National Budget sued appellant, alleging that National Budget had re-acquired and terminated Maryland Budget's master license, and therefore appellant was unlawfully operating its Budget franchises. DMF noted this appeal on October 26, 2004, and, upon DMF"s motion, this Court granted an injunction pending appeal on November 30, 2004, and we expedited this case's briefing and argument schedule.

## LEGAL ANALYSIS

█ In deciding whether to grant a request for a preliminary injunction, trial judges must consider the following four factors:

1.  the likelihood that the plaintiff will succeed on the merits;

2.  the "balance of convenience," determined by whether greater injury would be done to the defendant by granting the injunction than would result from its refusal;

3.  whether plaintiff will suffer irreparable injury unless the injunction is granted; and

4.  the public interest.

*See generally Lerner v. Lerner,* 306 Md. 771, 783–85, 511 A.2d 501 (1986); *Antwerpen Dodge, Ltd. v. Herb Gordon Auto World, Inc.,* 117 Md.App. 290, 303–05, 699 A.2d 1209 (1997); *Teferi v. Dupont Plaza Assocs.,* 77 Md.App. 566, 578–79, 551 A.2d 477 (1989); Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 596–99, 617–19 (3d ed.2003); Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* § 7.1 (3d ed.2004).

▇▇▇▇ Despite some suggestion to the contrary,[3] these factors are not like elements of a tort. *Lerner,* 306 Md. at 776–77, 511 A.2d 501. The four factors are simply that, *factors,* designed to guide trial judges in deciding whether a preliminary injunction should be issued. If a trial judge correctly identifies and applies these factors, we will not disturb the judge's decision absent an abuse of discretion.

## I

The trial judge concluded that DMF had little likelihood of succeeding on the merits of its claims. DMF contends that the trial judge erred in applying this factor and that the appropriate question was not whether DMF showed a likelihood of succeeding on the merits, but whether DMF "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and

---

3. *See, e.g., Fogle v. H & G Restaurant, Inc.,* 337 Md. 441, 455–56, 654 A.2d 449 (1995). In *Fogle,* a case where private litigants sought an injunction preventing government agencies from enforcing a smoking ban, the Court said, "[T]he party seeking the injunction must prove the existence of *all four* of the factors ... to be entitled to preliminary relief. The failure to prove the existence of even one of the four factors will preclude the grant of preliminary relief." *Id.* at 456, 654 A.2d 449 (citations omitted); *see also Dep't of Transp., Motor Vehicle Admin. v. Armacost,* 299 Md. 392, 405, 474 A.2d 191 (1984). We tried to harmonize this element theory of injunctive relief in *Antwerpen Dodge,* 117 Md.App. at 305 n. 6, 699 A.2d 1209, suggesting that all four elements must be proved only when a government entity is a party to the case, not when only private interests are involved. That suggestion in *Antwerpen,* however, is at odds with the Court of Appeals' cases in which government entities were actually involved; in those cases, the Court of Appeals expressly adopted a theory that when government interests are at stake, fewer than all four factors will apply, and trial courts, exercising their traditional equity powers, have broader latitude than when only private interests are involved. *See, e.g., State Dep't of Health & Mental Hygiene,* 281 Md. at 555–57, 383 A.2d 51. Under the Court of Appeals' holdings, then, it would seem more likely that all four factors must be proved in cases involving private litigants, but when government entities are involved, courts have discretion to disband with a rigorous application of all four factors. In any event, harmonizing the apparent discrepancies in the cases is a task the Court of Appeals will have to address and is not for us to decide in this appeal.

thus for more deliberate investigation." *Lerner,* 306 Md. at 784, 511 A.2d 501.

■ Preliminarily, we observe that the separate articulations—"likelihood of success on the merits" and "substantial question going to the merits"—should not be thought of as discrete concepts, but, consistent with the factorial (rather than elemental) nature of the four injunction factors, these articulations should be thought of as related points along a continuum. Pigeonholing the success-on-the-merits factor as *either* "probability of success on the merits" *or* "raising a substantial question on the merits" is inconsistent with the flexibility that remains one of the cornerstones of meting out the equitable remedy of an injunction. *See Lerner,* 306 Md. at 783–85, 511 A.2d 501; *see also* W. Michael Garner, *Franchise & Distrib. Law & Practice* § 17:41 (2004) (*Franchise & Distrib. Law*) ("The party seeking an injunction must also show a likelihood of success on the merits or at least sufficiently serious questions going to the merits to make a fair ground for litigation. Some courts look to this alternative requirement on a kind of sliding scale working in tandem with the balance of hardships: the greater the hardship on the party seeking the injunction, the less of a showing of success on the merits need be made."). Thus, although the Court of Appeals has said that the importance of success-on-the-merits diminishes as the balance of convenience tips toward the moving party, gradually replacing the "probability of success" standard with the "substantial questions" standard, these articulations of the factors to be applied remain fluid, rather than the rigid formulations proposed by the parties.

DMF argues that it advanced five theories on the merits, each of them satisfying the "serious and substantial question" standard. Appellees argue that none of DMF's theories satisfies the substantial question standard. It is unnecessary to analyze each of them, as we conclude that at least one of them clearly presents a substantial question going to the merits.

■ DMF argues that its settlement with Maryland Budget granted to DMF a five-year term on its subfranchise rights.

The settlement stated: "Each of the revised Sublicense Agreements *has* a term of five years and is renewable at DMF's election for successive periods of one year each." (Emphasis added.) Prior to the revisions achieved through the settlement, the term of the subfranchises was defined by the unrevised agreements' paragraph 10.01: "Subject to the provision of Paragraph 1.05, this Agreement and sublicense shall, unless sooner terminated as hereinafter provided, remain in force for a period of five (5) years. . . ."

DMF argues that the settlement agreement's language effectively deleted paragraph 1.05 from the subfranchise agreements. While we agree with DMF that the agreements are reasonably susceptible to DMF's interpretation, we need not definitively answer that question today. For purposes of our review, it suffices that DMF has presented a substantial question going to the merits of its case. Without expressing a dispositive opinion on the merits of DMF's case, we hold that DMF carried its burden of showing the potential likelihood of succeeding on the merits.

Appellees argue that paragraph 1.05 was included merely as a gratuitous statement of the law that would apply even in its absence. They argue that, as a matter of law, when Maryland Budget's master license terminates, the subfranchisees' rights terminate. The sum total of legal authority cited by appellees to support that argument is *Kitchen Investment Group, Inc. v. Buchtel Food, Inc.*, Bus. Franchise Guide (CCH), ¶ 12,755 (N.D.Ohio Jan. 8, 2004), an unpublished trial court memorandum [4] unavailable to us through any generally recognized

---

4. Under the Sixth Circuit Court of Appeals' local rule 28, "Citation of unpublished decisions in . . . this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case. If a party believes, nevertheless, that an unpublished disposition has precedential value in relation to a material issue in a case, and that there is no published opinion that would serve as well, such decision may be cited if that party serves a copy thereof on all other parties in the case and on this Court." Thus, appellees' citation of this case is permitted under the rules of its jurisdiction of origin, and is not prohibited by Maryland Rule 1–104, which is silent on citation of foreign unreported opinions. *Cf. Alterna-*

publication network in the legal community. We can only conclude that had more persuasive authority been uncovered in support of appellees' position, they would have cited it. DMF has raised a substantial question going to the merits of its case, which appellees have been unable to rebut.

## II

■ The trial court found that the balance of convenience tipped in DMF''s favor, i.e., it would be more burdensome for DMF to lose its subfranchises (with the possibility of monetary compensation later) than it would be for appellees to tolerate DMF''s continued operation of its subfranchises, until a final determination on the merits. On this issue, it has been observed:

> With respect to the balance of the equities, in termination cases, courts usually find that the equities tip in favor of a long-term franchisee facing termination, reasoning that maintenance of the status quo will not injure the franchisor while failure to grant an injunction and permit termination might result in destruction of the franchisee's business.

*Franchise & Distrib. Law* § 17:41. Mindful that we are not deciding this issue in the first instance, but rather we are only reviewing the trial judge's conclusion, we hold that appellees have failed to show that the trial judge erred in finding that the balance of convenience favored DMF.

## III

■ The trial judge concluded that, because a damages expert most likely could quantify DMF''s losses, those potential losses (if actionable) would not be irreparable. Commentary, and caselaw, however, are generally in accord that the loss of a business is an irreparable loss.

> Although some courts hold that the loss of a business can be recompensed with money damages, and therefore is not

*tives Unlimited, Inc. v. New Balt. City Bd. of School Comm'rs*, 155 Md.App. 415, 457 n. 4, 843 A.2d 252 (2004).

irreparable, most courts agree that total destruction of a franchised business which flows from termination, constitutes irreparable injury.

*Id.* § 17:39. The leading case cited for that proposition is *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir.1970), where Judge Friendly, for the court, stated:

Of course, Semmes' past profits would afford a basis for calculating damages for wrongful termination, and no one doubts Ford's ability to respond. But the right to continue a business in which William Semmes had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms; the Semmes want to sell automobiles, not to live on the income from a damages award. Moreover, they want to continue living. . . . [A] judgment for damages acquired years after his franchise has been taken away and his business obliterated is small consolation to one who, as here, has had a Ford franchise for many years. As against this, the hardship to Ford in continuing the Semmes dealership pendente lite was relatively small.

(Citations and quotation marks omitted); *see also Canterbury Career School, Inc. v. Riley,* 833 F.Supp. 1097, 1105 (D.N.J. 1993) ("Where the result of denying injunctive relief would be the destruction of an ongoing business, such a result generally constitutes irreparable injury."); *Goldstein v. Miller,* 488 F.Supp. 156, 175 (D.Md.1980) ("Where the potential economic loss is so great as to threaten the existence of the moving party's business, then an injunction may be granted, even though the amount of direct financial harm is readily ascertainable."). Even assuming, as the trial judge concluded here, that damages were readily ascertainable, we hold that the loss of the movant's business constitutes irreparable injury under our injunctive relief analysis. *Cf. Dolan v. Motion Picture & Television Operators Union,* 206 Md. 256, 258, 111 A.2d 462 (1955) (losing employment is irreparable injury).

## IV

■ The record shows that, although he identified that four factors must be analyzed, the trial judge omitted the public

interest from his analysis. This may have been because it appears that whether or not the injunction issues, the franchises will remain in operation, either by DMF or by National Budget; in either case, there will be no rental car crisis in the affected areas, and at trial, DMF's principal testified to his intent to keep DMF's employees employed in another DMF business if the franchises terminate, so the public's interest in the case is virtually nonexistent. At best, the issue breaks evenly for both parties.

## CONCLUSION

We affirm the trial court's finding that the balance of convenience favored DMF. We reverse, however, its findings that DMF would not suffer irreparable injury if its subfranchises are wrongfully terminated, and that DMF failed to show an adequate likelihood of success on the merits. Given that prematurely terminating the franchises would do more harm to DMF than maintaining them would do to National Budget, and that DMF has shown an adequate likelihood that it may succeed on the merits, an injunction should have been issued to maintain the status quo until a final determination on the merits.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ISSUE A PRELIMINARY INJUNCTION.**

**COSTS TO BE PAID BY APPELLEES.**