500 A.2d 307

**Louis VAVASORI**

**v.**

**COMMISSION ON HUMAN RELATIONS, et al.**

**No. 288, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Nov. 15, 1985.

Certiorari Denied Feb. 25, 1986.

**238**

Benjamin Lipsitz, Baltimore, for appellant.

Sally L. Swann (Risselle Rosenthal Fleisher and Denise Noonan Slavin, on brief), Baltimore, for appellee, Com'n on Human Relations.

Peter S. Saucier (N. Peter Lareau and Venable, Baetjer & Howard, on brief), Baltimore, for appellee, Vulcan-Hart Corp.

Argued before GARRITY, ADKINS and KARWACKI, JJ.

KARWACKI, Judge.

Louis Vavasori appeals from an order of the Circuit Court for Baltimore City (Hammerman, C.J.), which affirmed the decision of the Maryland Commission on Human Relations (the Commission) that Vulcan-Hart Corporation, his employer, had not discriminated against him on the basis of a physical handicap.

The appellant presents two issues for our decision. First, he contends that he was denied due process in not being afforded a sufficient opportunity to present evidence to the Commission of his claim of discrimination by his employer. Second, the appellant argues that the finding by the Commission of no probable cause to believe that there was discrimination is not supported by substantial evidence.

This is the second time that the appellant has brought his claim of discrimination to this Court. The first occasion resulted in a December 27, 1982 unreported opinion by this Court (*Vavasori v. Vulcan-Hart Corp.*, No. 209, September Term, 1982; *per curiam*), reversing a ruling of the Baltimore City Court.[1] There, the lower court had dismissed the appellant's appeal from the Commission's finding of no probable cause of discrimination against him on the basis that the court had no jurisdiction to review the Commis-

---

1. The Baltimore City Court was consolidated with the other courts of the Supreme Bench of Baltimore City into the newly created Circuit Court for Baltimore City on January 1, 1983. Chapter 523 of the Acts of 1980, ratified November 4, 1980.

sion's conclusion. We held in our 1982 opinion that the appellant was entitled to his "day in court," and the appellant's case was remanded to the lower court where a hearing was held. On January 25, 1985, the Circuit Court for Baltimore City found that there was substantial evidence to support the Commission's finding of no probable cause and affirmed the dismissal of the appellant's complaint.

This case had its genesis on January 9, 1979 when the appellant filed a complaint with the Commission alleging that Vulcan-Hart[2] had engaged in unlawful employment discrimination against him. The appellant specifically alleged that his employer laid him off from his job as a press brake operator[3] because his bad back (he had undergone a spinal fusion which limited him to working no more than 40 hours per week) prevented him from working 10 hour shifts. The appellant further complained that his employer honored similar work restrictions with respect to other employees with physical handicaps.

The appellant began work for Vulcan-Hart in May of 1967. From early 1971 until July 20, 1978, when the appellant was laid off, the appellant had problems with his back. The appellant contends that on May 9, 1978, Vulcan-Hart required him to work a 10 hour shift. This long work day resulted in more back problems—this time forcing him to miss five weeks of work. The appellant alleged in his complaint to the Commission that he was thereafter laid off because of his inability to work greater than a 40 hour week.

Vulcan-Hart's position is that on May 9, 1978, Vulcan-Hart's general foreman asked the appellant if he could work overtime. The appellant told the foreman that he was

---

**2.** Vulcan-Hart is a Delaware corporation with a factory located on Northpoint Boulevard in Baltimore County. Stoves and other food preparation equipment are manufactured at that plant.

**3.** A press brake operator forms flanges on parts to be used on stoves and other equipment.

restricted to a 40 hour work week, but that he was willing to try to work longer. The appellant then missed five weeks of work, and when he did return, he worked only two hours, saying that he was physically unable to work.

The appellant was examined by a physician designated by Vulcan-Hart, who determined that the appellant could only perform "light, sedentary" work. Since no such work was then available, Vulcan-Hart represented that it placed the appellant on medical leave of absence.

From the date of the appellant's filing of his complaint in January of 1979, the facts are not in dispute. On February 26, 1979, the Commission requested information and documents from Vulcan-Hart; it complied. On March 14, 1979, the appellant was notified by letter that a fact finding conference would be held by the Commission on April 19, 1979.[4] The appellant was at the conference and was represented by counsel. Counsel for Vulcan-Hart was also present. Both parties presented the facts of their respective cases, and the conference concluded with an agreement that if Vulcan-Hart's physician certified that the appellant was capable of returning to work as a press brake operator, then the appellant could return to work. After two examinations, Vulcan-Hart's physician concluded that the appellant was unable to return to his old job.

On September 27, 1979, the Commission's investigatory staff issued their "written findings" concluding that there was no probable cause to believe that the appellant had been the victim of discrimination. Consequently, the appellant's complaint was administratively dismissed by the Commission.

The appellant next filed a motion with David L. Glenn, Executive Director of the Commission, requesting a reconsideration of this administrative dismissal. After a review of the record including additional documentation by the appellant, Glenn determined that the record did not support

---

**4.** The conference was postponed and not held until April 25, 1979.

a reconsideration. As discussed earlier, the Circuit Court for Baltimore City ultimately affirmed the Commission's action. We likewise find no merit in the appellant's arguments, and shall affirm.

The appellant asserts that he was denied due process of law when he allegedly was "not afforded a sufficient evidentiary opportunity before the commission dismissed his complaint." The appellant's contention presents us with the opportunity to determine whether the procedure followed by the Commission as provided for in Md.Code (1957, 1979 Repl.Vol.), Article 49B comports with due process.

Preliminarily, we note that the due process clauses of Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning. The Court of Appeals has decided that "Supreme Court interpretations of the federal provision are authority for interpretation of Article 24." *Department of Transportation v. Armacost*, 299 Md. 392, 415–16, 474 A.2d 191 (1984); *Pitsenberger v. Pitsenberger*, 287 Md. 20, 27, 410 A.2d 1052 (1980), *appeal dismissed*, 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10 (1980). In order for the appellant to establish a violation of procedural due process, he must first show that state action has resulted in his being deprived of a property interest. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Armacost*, 299 Md. at 416, 474 A.2d 191. It is clear in this case that state action was involved. The remedy of Art. 49B was created, regulated, and enforced by the State. *See Pitsenberger*, 287 Md. at 28, 410 A.2d 1052. Further, it is beyond serious contention that the appellant does have a property interest in his claim of employment discrimination. The Supreme Court has held that such a complaint is a species of property protected by the Fourteenth Amendment's Due Process Clause. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265, 273 (1982). In that case, the Court considered a challenge to a state law that barred

employment discrimination on the basis of physical handicap unrelated to ability. The complainant, in order to obtain relief under the applicable statute, had to bring a charge of unlawful conduct before the Illinois Fair Employment Practices Commission within 180 days of the occurrence of the allegedly discriminatory act. The statute "then gave the Commission 120 days within which to convene a fact finding conference designed to obtain evidence, ascertain the positions of the parties, and explore the possibility of a negotiated settlement." *Logan*, 455 U.S. at 424, 102 S.Ct. at 1152, 71 L.Ed.2d at 270.

The Supreme Court held in *Logan* that a victim of alleged employment discrimination had a property right in his claim before the Illinois Commission and was therefore entitled to procedural due process. Because of bureaucratic error the Illinois Commission failed to convene a fact finding conference within the prescribed 120 days, and under the Illinois statute, the commission was divested of jurisdiction over the complaint. As the Court explained its holding in *Logan*, "This conclusion is hardly a novel one. The Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances." *Logan*, 455 U.S. at 429, 102 S.Ct. at 1154, 71 L.Ed.2d at 273. The Supreme Court has emphasized that the hallmark of property is an individual entitlement grounded in state law, which cannot be removed except "for cause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30, 40 (1978). Cases in which the Supreme Court has found a property right include: *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (horse trainer's license protected); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (disability benefits); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (high school education); and *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare benefits).

Likewise, the appellant's right to avail himself of the adjudicatory procedures of the Commission is generated by the State. Justice Blackmun, writing for the Court in *Logan,* observed, "It would require a remarkable reading of ["property"] to conclude that a horse trainer's license is a protected property interest under the Fourteenth Amendment, while a state-created right to redress discrimination is not." *Logan,* 455 U.S. at 431, 102 S.Ct. at 1155, 71 L.Ed.2d at 275. We therefore conclude that the appellant was able to meet his threshhold burden of showing that there was state action involved, and that he did have a property interest at stake. Therefore, he successfully demonstrated that he was entitled to some level of procedural due process—by virtue of the rights and remedies created by Art. 49B—which guaranteed him that his allegation of discrimination would, at some level, be evaluated.

Having concluded that the appellant's claim of employment discrimination is entitled to procedural due process protection, we now turn to the questions of whether the process to which he was entitled under Article 49B, and the Commission's regulations (COMAR 14.03.01–.08), and the process which he was furnished by the Commission was due. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Armacost,* 299 Md. at 416. It is established that due process does not require adherence to any particular procedure. Rather, as the Court of Appeals noted in *Armacost,* 299 Md. at 416, 474 A.2d 191, "due process is flexible and calls only for such procedural protections as the particular situation demands." Fundamentally, due process requires the opportunity to be heard "at a meaningful time and in a meaningful manner." *Pitsenberger,* 287 Md. at 30, 410 A.2d 1052 (quoting *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 902, 47 L.Ed.2d at 32). The minimum due process required where a deprivation of a property interest is involved is that the deprivation be preceded by " 'notice and opportunity for hearing appropriate to the nature of the case.' " *Goss v. Lopez,* 419 U.S. at 579, 95 S.Ct. at 738, 42 L.Ed.2d at 737 (quoting *Mullane v. Central Hanover Trust*

*Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). In order to determine what due process is required, there must be a balancing of the private and government interests affected. *Mathews,* 424 U.S. at 334, 96 S.Ct. at 902, 47 L.Ed.2d at 33; *Armacost,* 299 Md. at 416, 474 A.2d 191. The Supreme Court in *Mathews* set forth the factors to be considered:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 334–35, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

The appellant argues that he was not afforded a "fair evidentiary opportunity" because he was denied proper notice of the fact finding conference that was held on April 29, 1979, and the conference did not provide him "sufficient chance" to present his case.

In considering the appellant's contention that he has been denied procedural due process, we begin by considering the nature of his interests at stake. The next step is to weigh the appellant's interest in having an "adequate evidentiary hearing" including proper notice of such a hearing with the State's interest in implementing the procedure specified in Article 49B.

The appellant has an interest in having the Commission hear his claim of discrimination. His interest is in getting a remedy for what he perceives to be discrimination on the basis of his handicap. The State's interest is in having meritorious claims of discrimination expeditiously heard and

adjudicated, but also in having claims with no merit promptly dismissed.

Aware of the need to balance conflicting interests, the Legislature in Article 49B has provided a comprehensive scheme for initiating and resolving employment discrimination claims which has been further implemented by the Commission in promulgating its rules. Persons claiming to be aggrieved by such discrimination must file a complaint in writing under oath within six months of the date of the occurrence. Article 49B, § 9(a). Then, pursuant to Article 49B, § 10(a),

> the executive director shall consider the complaint and shall refer it to the Commission's staff for prompt investigation and ascertainment of the facts. The results of the investigation shall be made as written findings.

The Commission Rules of Procedure particularize further the procedures set forth in Article 49B. Once the Executive Director authorizes a complaint—that is, determines that the complaint is timely filed, that the complainant has standing to file, and that the Commission has jurisdiction, COMAR 14.03.01.02E—the case must be assigned to:

> a staff investigator who shall endeavor to gather promptly all information necessary and relevant to the making of a fair determination of the alleged discrimination. Any such investigation ... shall conclude with a written finding....

COMAR 14.03.01.03A.

To gather information necessary to make a "finding," a fact finding conference may be held:

> for the purposes of defining the issues contained in a complaint, determining which elements are undisputed, [and] resolving those issues which are susceptible of resolution....

COMAR 14.03.01.03B. The investigator may serve interrogatories on the respondent for fact gathering purposes. COMAR 14.03.01.03C. Moreover, in order to complete an investigation,

the investigator may, upon the written authorization of the Executive Director, issue a subpoena ad testificandum to compel the attendance and testimony of witnesses, or a subpoena duces tecum, or both, to compel the production of books, papers, records, and documents relevant or necessary to this investigation....

COMAR 14.03.01.03E. (*See also,* § 11(d) of Article 49B).

The results of the investigation are reported as " 'written findings' which shall chronicle the facts found to exist and the conclusions drawn therefrom." COMAR 14.03.01.05A. Importantly, Section .05B provides that:

If the findings conclude that there is no probable cause to believe that a discriminatory act has been or is being committed, the complainant shall be given the opportunity to apply to the Commission's Executive Director for reconsideration of the administrative dismissal of the complaint.

* * * * * *

When this application is made, the Executive Director shall review the entire file, and, in his discretion, shall grant or deny the application for reconsideration.

 We believe that the procedures prescribed by Article 49B and the Commission's rules adequately afforded the appellant procedural due process of his claim considering the competing interests of the State in the orderly administration of discrimination complaints. The screening of non-meritorious complaints by the Commission's staff and its executive director is a necessary and desirable repose of discretion in these administrators charged with redressing unlawful employment discrimination. *Cf. Banach v. State Comm'n on Human Rel.,* 277 Md. 502, 356 A.2d 242 (1976). Nothing in the due process clauses requires that all claims be afforded a full evidentiary hearing on their merits. In *Logan v. Zimmerman Brush Co., supra,* the Supreme Court found that a statutory procedure for the dismissal of employment discrimination complaints denied a complainant due process. The offending procedure there under consid-

eration mandated dismissal of a complaint where the commission evaluating it failed to schedule a fact finding conference within a prescribed period—an event completely beyond the control of the complainant. In so holding the Court pointed out:

> Obviously, nothing we have said entitles every civil litigant to a hearing on the merits in every case. The State may erect reasonable procedural requirements for triggering the right to an adjudication be they statutes of limitations, *cf. Chase Securities Corp. v. Donaldson,* 325 U.S. [304] at 314–316, 65 S.Ct. [1137] at 1142–1143 [89 L.Ed. 1628 (1945) ], or, in an appropriate case, filing fees. *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). And the State certainly accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule. *Hammond Packing Co. v. Arkansas,* 212 U.S. [322] at 351, 29 S.Ct. [370] at 380; *Windsor v. McVeigh,* 93 U.S., at 278 [53 L.Ed. 530 (1909) ]. What the Fourteenth Amendment does require, however, "is 'an *opportunity* ... granted at a meaningful time and in a meaningful manner,' *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (emphasis added), 'for [a] hearing appropriate to the nature of the case,' *Mullane v. Central Hanover Tr. Co., supra,* 339 U.S., at 313, 70 S.Ct., at 656." *Boddie v. Connecticut,* 401 U.S. [371] at 378, 91 S.Ct. [780] at 786 [28 L.Ed.2d 113 (1971) ].

*Logan,* 455 U.S. at 437, 102 S.Ct. at 1158–59, 71 L.Ed.2d at 279.

The next area of inquiry is whether the appellant was accorded that process. The appellant argues that he was not given adequate notice that the fact finding hearing was his only opportunity to present his case. The notice that the appellant received was in a letter addressed to him by the Commission. The letter, in its entirety, read:

> In an attempt to rapidly investigate and resolve the above referenced complaint, I am arranging a Fact Finding Conference to be held on Thursday, April 19, 1979 at the

Commission's offices. Your attendance is required at 10:00 a.m.

This will not be a formal hearing, but part of the investigatory process in which facts of the case are gathered. However, a discussion of settlement is appropriate and the Commission will strongly urge both parties to consider a mutually agreeable settlement of the charge.

If this date is unacceptable to you, please call me immediately so that we may consider another time.

The letter informed the appellant that there was to be a fact finding conference that was part of the Commission's investigation. The letter specified that the conference was at the stage of the investigation where "the facts of the case are gathered." The appellant was also provided with ample time to prepare for the conference. The letter from the Commission was dated March 14, 1979, and set a date for the conference of April 19, 1979, although the conference was not held until the 25th of April.

For a hearing to be fair, the essential elements of adequate notice and opportunity to be heard must be accorded. *Bernstein v. Board of Education,* 245 Md. 464, 473, 226 A.2d 243 (1967). Notice of the fact finding conference scheduled for more than a month in advance provided ample opportunity for the appellant to prepare to meet his burden of establishing that there was probable cause for the Commission to continue its inquiry. Adequacy of the notice must be determined in light of the particular circumstances. *Bernstein, supra* (six days notice of hearing regarding the transfer of students in mid-term from one elementary school to another held adequate under the circumstances). Considering that the appellant had more than one month's notice of the hearing and that he had ample opportunity to prepare for the presentation of his case to the Commission's fact finder, we hold that the notice of the conference was fair.

Lastly, as to the appellant's assertion that he was denied a "sufficient evidentiary opportunity," the appellant

actually had two opportunities to make his case to the Commission. Besides the fact finding conference, the appellant submitted additional information in his appeal to the Executive Director. The Executive Director reviewed the entire file, including all additional materials submitted by the appellant, and concluded that the appellant's claims did not warrant a reversal of the earlier finding of no probable cause. We hold that the appellant was not deprived of procedural due process—that he was accorded adequate notice of Commission proceedings and an ample opportunity to be heard by the Commission.

The appellant also makes two other arguments that for the sake of clarity we combine into one. The appellant argues that the Commission's findings of no probable cause were not supported by substantial evidence.

The substantial evidence standard of review requires only that the reviewing court examine the agency's decision to determine whether reasoning minds could reasonably reach that conclusion by direct proof or by permissible inference from the facts and the record before the agency. *Commission on Human Relations v. Washington County Community,* 59 Md.App. 451, 476 A.2d 222, *cert. denied,* 301 Md. 354, 483 A.2d 38 (1984). In determining whether reasoning minds could reasonably reach the conclusion, we must view the Commission's decision in a light most favorable to it. The Commission's decision should be viewed as "prima facie correct" and it carries with it the presumption of validity. *Prince George's Doctors' Hospital v. Health Services Cost Review Comm'n,* 302 Md. 193, 201, 486 A.2d 744 (1985). This Court may not substitute its judgment for the expertise of the Commission. *Prince George's Doctors' Hosp.,* 302 Md. at 200, 486 A.2d 744.

After a review of the facts heretofore discussed, we find evidence to support the Commission's conclusion that there was no probable cause to believe that the appellant was the victim of discrimination. We agree with the court

below that the evidence supporting the Commission's finding is substantial.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANT.