684 A.2d 6

## BRAGUNIER MASONRY CONTRACTORS, INC.

v.

## MARYLAND COMMISSIONER OF LABOR AND INDUSTRY.

**No. 1793, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Oct. 31, 1996.

700

Richard Sampson (Sussan L. Mahallati, on the brief), Baltimore, for Appellant.

Gaston J. Sigur, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for Appellee.

Argued before WENNER and EYLER, JJ., and PAUL E. ALPERT, Judge (Retired), Specially Assigned.

EYLER, Judge.

Bragunier Masonry Contractors, Inc., appellant, was issued a citation by the Maryland Occupational Safety & Health Administration (MOSH) for violation of a work-place safety standard. Appellant asserts that the Commissioner of Labor & Industry, appellee, committed procedural legal error in reviewing a factual finding by the administrative law judge (ALJ) that had not been specified for review by either appellant or appellee and committed substantive legal error by erroneously interpreting the law applicable to the factual findings. Appellant appeals from a judgment entered by the Circuit Court for Washington County affirming appellee's ruling and presents two questions for our consideration.

I.   Whether the Circuit Court erred in affirming the Commissioner's reopening and adjudication of a legal issue that was not raised by either of the parties or the Commissioner on appeal from the Administrative Law Judge's decision.

II.   Whether the Circuit Court erred in affirming the Commissioner's misapplication of the *Anning–Johnson/Grossman* rule.[1]

Finding no error, we shall affirm the judgment.

## I.

### Facts

Appellant was a masonry subcontractor working at a construction site in Hagerstown, Maryland. After the concrete floors were poured, sections of steel reinforcing bars (rebar) were left protruding twenty-two to twenty-five and one half inches out of the concrete at evenly spaced intervals, to be

---

1. The reference is to an affirmative defense derived from *Anning–Johnson Company,* 4 OSHC 1193(BNA), 1976 WL 5967 (1976), OSAHRC LEXIS 527 (1976), and *Grossman Steel & Aluminum Corp.,* 4 OSHC 1185(BNA) (1976), OSAHRC LEXIS 528 (1976). Both are published opinions of the United States Occupational Safety and Health Review Commission ("Commission"), the agency empowered to adjudicate OSHA hearings.

used in securing the interior walls to the floor. Because rebar exposed in this fashion presents a potential risk of causing injury, MOSH guidelines require the bars to be "capped" pursuant to 29 C.F.R. § 1926.701(b), a Federal OSHA standard enforced by MOSH, which states: "All protruding reinforcing steel, onto and into which employees could fall, shall be guarded to eliminate the hazard of impalement." By agreement, it was the responsibility of the general contractor at the construction site, Morgan Keller, Inc., to cap the rebar.

Appellant's supervisory employee testified that he complained to Morgan Keller, Inc. about the uncapped rebar and, additionally, he testified that he told appellant's employees to avoid the areas where there was uncapped rebar. As the job progressed during the course of several days, the rebar remained uncapped.

On November 4, 1992, a MOSH inspector arrived to inspect the site. The inspector testified that she found employees of appellant working on a scaffold above and around the uncapped rebar. As a result of that inspection, MOSH cited appellant and other subcontractors for allowing workers to be exposed to the hazard. Appellant contested the citation.

On July 22, 1993, a hearing was held before the ALJ. Appellant argued that it had not violated the MOSH regulation and, in the alternative, that the *Anning–Johnson/Grossman* affirmative defense applied. The affirmative defense consists of two prongs that, if met, enable an employer to avoid liability in a multi-employer environment. Stated briefly, an employer can escape liability for an occupational safety and health violation if it establishes that it was not ultimately responsible for creating or controlling a hazard, and that it engaged in reasonable efforts to protect its employees.

The ALJ issued a decision on September 27, 1993, in which she found that appellant's employees were exposed to a hazardous condition and that appellant failed to comply with the cited standard (29 C.F.R. § 1926.701(b)). With respect to the affirmative defense, the ALJ found that appellant neither

created nor controlled the hazard, but that it failed to engage in reasonable efforts to protect its employees.

On October 14, 1993, appellant requested appellee to review the ALJ's findings on two issues. The first, not relevant here, concerned the factual existence of the uncapped rebar. The second issue, integral to this appeal, concerned the ALJ's interpretation and application of the *Anning–Johnson/Grossman* affirmative defense. Appellant requested appellee to review the ALJ's finding that appellant had not engaged in reasonable efforts to protect its employees but did not request review of the finding that it neither created nor controlled the hazard.

Appellee heard oral argument on January 6, 1994, and issued a final decision and order on September 9, 1994. Appellee did not, however, limit his review to the one specific finding that was the subject of appellant's request. Appellee reversed the ALJ as to the first prong of the *Anning–Johnson/Grossman* defense and found that appellant did indeed control the hazard. Appellee adopted the other portions of the ALJ's decision, including the ALJ's ruling as to the second prong of the defense, and ruled against appellant.

On October 7, 1994, appellant filed a petition for judicial review in the Circuit Court for Washington County. On September 18, 1995, the circuit court affirmed the decision of appellee. Appellant timely noted an appeal to this Court.

## II.

### Discussion

#### A.

Appellant first raises a fundamental issue regarding appellee's review of the ALJ's decision. Specifically, appellant asserts that appellee acted outside his authority by reviewing a finding by the ALJ not questioned in the petition for review. We address this argument in two parts: (1) what appellee is empowered to do by statute, and (2) what appellant is entitled to by due process of law.

*Appellee's Scope of Review*

■    The relationship between the ALJ and appellee requires some comment. Two procedural statutes are in operation during a MOSH administrative hearing and review. They are Title 5 (MOSH) of the Labor and Employment article (LE), Md.Code Ann. (1991 Repl.Vol. & Supp.1995) and the Administrative Procedure Act (APA), State Government article (SG), §§ 10–201 et seq., Md.Code Ann. (Repl.Vol.1995).

The model administrative procedure act was developed to encourage a more uniform procedural process for administrative agencies. Maryland adopted the 1961 version of the model with some changes. *See* SG §§ 10–201 et seq. The APA applies to all state administrative agencies not specifically exempted and provides a standard framework of fair and appropriate procedures for agencies that are responsible for both administration and adjudication of their respective statutes.

For present purposes, the relevant section of the APA is SG § 10–205:

**Delegation of hearing authority.**

(a) *To whom delegated.*—

(1) A board, commission, or agency head authorized to conduct a contested case hearing shall:

(i) conduct the hearing; or

(ii) delegate the authority to conduct the contested case hearing to:

1.   the Office; or

2.   with the prior written approval of the Chief Administrative Law Judge, a person not employed by the Office.

(2) With the written approval of the Chief Administrative Law Judge, a class of contested case hearings may be delegated as provided in paragraph (1)(ii) 2 of this subsection.

(3) This subsection is not intended to restrict the right of an individual, expressly authorized by a statute in effect on October 1, 1993, to conduct a contested case hearing.

(b) *Scope of authority delegated.*— An agency may delegate to the Office the authority to issue:

(1) proposed or final findings of fact;

(2) proposed or final conclusions of law;

(3) proposed or final findings of fact and conclusions of law;

(4) proposed or final orders or orders under Article 49B of the Code; or

(5) the final administrative decision of an agency in a contested case.

Under SG § 10–205(a), a state agency may delegate all or some of its reviewing responsibility to an ALJ. The section is broad enough to allow the agency to determine the extent of the adjudicative responsibility given. *See* § 10–205(b). This allows the various agencies enough flexibility to carry out their diverse functions in a logical manner.

MOSH is one of the many Maryland agencies governed by the APA; therefore, any discussion of the statutes pursuant to which MOSH operates must occur with the APA in mind. This is true in the case before us, in which the relationship between the ALJ, a creation of the APA, and appellee, fulfilling his responsibilities under the MOSH statutes, is a central issue.

Appellee has the authority to delegate the responsibility of a MOSH hearing to an ALJ pursuant to LE § 5–214. The relevant subsections state:

**Hearings.**

(a) *Required.*— The Commissioner shall grant a hearing, if practicable, within 30 days after receipt of a notice that an employer or employee or representative of an employee submits under § 5–213 of this subtitle.

(b) *Parties.*— An employee whom a hearing under this section affects or a representative of the employee may participate as a party in a hearing under this section.

(c) *Application of contested case provisions.*— The Commissioner shall give notice and hold a hearing under

this subtitle in accordance with Title 10, Subtitle 2 of the State Government Article.

.    .    .    .    .

(e) *Hearing examiner.*—

(1) When the Commissioner appoints a hearing examiner to hold a hearing under this section, the examiner shall prepare a record that includes testimony.

(2) A report that a hearing examiner submits shall become a final order of the Commissioner unless, within 15 work days after submission of the report:

(i) the Commissioner orders a review of the proceeding; or

(ii) an employee, representative of an employee, or employer whom the report affects submits to the Commissioner a written request for a review of the proceeding.

(f) *Order of Commissioner on citation or penalty.*—

(1) After review of a proceeding under subsection (e) of this section, with or without a hearing, the Commissioner shall pass an order that, on the bases of findings of fact, affirms, modifies, or vacates the citation or proposed penalty or directs other appropriate relief.

(2) An order of the Commissioner under paragraph (1) of this subsection is final 15 days after passage of the order.

When appellee delegates the hearing responsibility to an ALJ, the ALJ becomes an extension of appellee. Any responsibilities not expressly given the ALJ remain with appellee and, unless statutorily proscribed, appellee reserves the right to review any aspect of an ALJ decision. After fifteen days, pursuant to LE § 5–214(e)(2), the ALJ's report becomes "a final order of the Commissioner," not of the ALJ.

Given that LE § 5–214(f) grants appellee express authority to "affirm, modify, or vacate" the ALJ's opinion, and given that he may order a review of the decision of the ALJ on his own authority, it would contravene the statute to allow appellee's review authority to be unduly restricted by narrow

pleadings.[2] Appellee merely delegates the hearing function to the ALJ; to hold otherwise would give the ALJ greater authority than statutorily intended. Moreover, it would produce absurd results. For example, if an ALJ committed a clear error in favor of a party but ruled against the party because of another error, and the party appealed but did not mention the error in its favor, the reviewing entity would be bound to issue an erroneous decision.

In support of appellant's narrow and rigid interpretation of appellee's scope of review, appellant relies on LE § 5-214(e)(2), *supra,* and COMAR 09.12.20.16(B) and (C):

B.   The determination of the hearing examiner shall become the final order of the Commissioner unless, in accordance with the Act:

.   (1) The employer, or an employee or representative of an employee, requests a review; or

(2) The Commission orders a review.

C.   Review of Proceedings Before the Commissioner.

(1) A request for review filed by an affected employer, or an employee or representative of an employee, shall:

(a) be in writing;

(b) *contain a concise statement identifying each portion of the hearing examiner's determination for which a review is requested.*

(Emphasis added.)

Appellant argues that, unless appellee orders a review pursuant to B(2), a review petition submitted in accordance with section C(1)(b) limits appellee's review to that portion of the ALJ's opinion appellant wishes to question. Appellant concludes that, because neither appellant nor appellee re-

---

**2.** SG § 10–220(d)(4) provides that, if a hearing is conducted by the Office of Administrative Hearings, and the decision of the agency, such as appellee, includes any changes, modifications, or amendments to the ALJ's proposed findings, the agency's decision must contain an explanation.

quested a review of the finding with respect to control of the hazard, that portion of the ALJ's opinion became final.

We first note that the issue is one of scope of review—not finality—as argued by appellant. As noted previously, it is appellee, not the ALJ, that issues the "final" decision.[3] We read the regulation, not as a restriction placed on appellee to limit the scope of his review of the proposed decision, but as an aid in clarifying the issues in a disputed case.

Such an interpretation is implied by *Kohli v. LOOC, Inc.,* 103 Md.App. 694, 654 A.2d 922 (1995), *cert. granted,* 342 Md. 582, 678 A.2d 1047 (1996). In *Kohli,* an employer was brought before the Maryland Commission on Human Relations for unlawful employment discrimination. After a hearing before the ALJ, the ALJ issued an order finding that the employer had discriminated. The employer appealed to the Commission on Human Relations and it reversed, adopting the factual findings of the ALJ, but disagreeing with her application of the law. The employee appealed the Commission's ruling and argued that it applied the wrong standard of review to the decision of the ALJ. The employee argued that the Commission should have utilized the substantial evidence standard, the normal standard for judicial review.

Like the MOSH Commission, the Commission on Human Relations is governed by the APA and its own regulations. The *Kohli* court noted that:

Under Maryland's current system of State administrative procedures,set forth in The Administrative Procedure Act ("the APA"), Md.Code Ann., State Gov't 10–101 et seq. (1993 Repl.Vol. & Supp.1994), the head of a covered agency has the option, under 10–205 of the APA, of either allowing the agency itself to conduct the hearing in a contested case, or delegating such authority to the Office of Administrative Hearings ("the OAH"), which designates an administrative

---

**3.** Compare review of a final judgment of a trial court by an appellate court where a separable part of a judgment may become final if not raised on appeal. *See Harrison v. Harrison,* 109 Md.App. 652, 673–75, 675 A.2d 1003 (1996).

law judge to perform that function. In the event that an agency elects to have the OAH play a role in the hearing process, *administrative law judges are generally employed not to render a final decision as a result of the hearing*, but rather to develop a record and to make a recommendation to the agency head, which may either be adopted, modified, or rejected at the agency's discretion.

*Kohli*, 103 Md.App. at 712, 654 A.2d 922 (emphasis added).

However, the *Kohli* court pointed out that, unlike other agencies, the Commission on Human Relations elected to delegate full hearing authority to the ALJ. By its own regulations, the appeal board of the Commission on Human Relations:

may affirm, reverse, or modify the administrative law judge's decision in accordance with the standards *as set forth in State Government Article, 10–222(h), Annotated Code of Maryland. Id., 14.03.01.10(F)(1).* Thus, although 10–222(h) codifies the standards by which a court is bound in reviewing the final administrative decision in a contested case, the Commission has elected to bind its Appeal Board, in cases involving discriminatory employment practices, to those same standards in reviewing the ALJ's decision in the instant case.

*Kohli*, 103 Md.App. at 713, 654 A.2d 922 (emphasis added).

By adopting the standard of review enunciated in SG § 10–222, the Commission on Human Relations has limited its authority to review an ALJ decision.[4] Appellant has not

___

4. SG § 10–222(h) states that:
   § 10–222. **Judicial review.**
   (h) *Decision.*— In a proceeding under this section, the court may:
   (1) remand the case for further proceedings;
   (2) affirm the final decision; or
   (3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
   (i) is unconstitutional;
   (ii) exceeds the statutory authority or jurisdiction of the final decision maker;
   (iii) results from an unlawful procedure;

shown, and we cannot discover, any regulation that limits the scope of review or places the standard of judicial review upon appellee.

By petitioning for review, appellant wanted appellee to adopt one of the ALJ's findings relevant to the affirmative defense issue, while seeking a reargument on another finding relevant to the same issue. Appellant cannot limit appellee's scope of review by such selective pleading.[5] The system currently in place gives appellant two *appellate* reviews, judicial in nature, by right, one before the circuit court, and another here.

### Due Process of Law

■ The existence of statutory authority to review the ALJ's decision does not necessarily mean that appellee's actions satisfied due process of law. Though appellant's due process argument is made without much support, it has rarely been addressed in the context of reviews within an administrative agency.

Both the Maryland Declaration of Rights and the Constitution of the United States guarantee that a person will not be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Md. Declaration of Rights art. 24. We addressed procedural due process in an administrative setting in *Vavasori v. Commission on Human Relations*, 65 Md.App. 237, 243, 500 A.2d 307 (1985), in which we stated:

(iv) is affected by any other error of law;
(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
(vi) is arbitrary or capricious.

**5.** The points on appeal were not as discrete as appellant maintains. In its appeal to appellee, appellant sought "a review of the Hearing Examiner's application of the law relating to the affirmative defense available to a subcontractor, known as the *Anning–Johnson/Grossman* defense." The same facts are relevant to both prongs of that defense. However, since much of appellant's argument to appellee implies a reliance on the ALJ's ruling on the control issue, we have addressed appellant's argument.

In order for the appellant to establish a violation of procedural due process, he must first show that state action has resulted in his being deprived of a property interest. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *[Department of Transp. v.] Armacost*, 299 Md. [392] at 416, 474 A.2d 191 [(1984)].

■ A party has a valid property interest in an administrative appeal. *See generally Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982). We have no difficulty recognizing that appellant has a legitimate interest in the outcome of the MOSH petition, and we therefore proceed to examine if the actions of appellee satisfied due process of law.

As we stated in *Vavasori*, 65 Md.App. at 245, 500 A.2d 307:

[D]ue process does not require adherence to any particular procedure.... The minimum due process required where a deprivation of a property interest is involved is that the deprivation be preceded by " 'notice and opportunity for hearing appropriate to the nature of the case.' " *Goss v. Lopez*, 419 U.S. at 579, 95 S.Ct. at 738, 42 L.Ed.2d at 737 (quoting *Mullane v. Central Hanover [Bank &] Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). In order to determine what due process is required, there must be a balancing of the private and government interests affected. *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902, 47 L.Ed.2d at 33; *Armacost*, 299 Md. at 416, 474 A.2d 191.

The Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), set forth the factors to be considered when addressing procedural due process in an administrative setting:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

■ Though it may seem self-evident from the body of authority, we explicitly state that the level of due process required must be decided under the facts and circumstances of each case. *See Beeman v. Department of Health & Mental Hygiene,* 107 Md.App. 122, 141–42, 666 A.2d 1314 (1995). Guided by the law of due process as it has been enunciated by the Supreme Court and the Maryland courts of appeal, we find no infringement of due process in the interplay between the APA and MOSH, nor do we see any infringement as the procedure was applied to appellant.

This is not to say that the current system could never be applied so as to violate due process of law. An overzealous reviewing arbiter, in an attempt to cure the defects in an ALJ's findings, could deny a party a fair opportunity to be heard. As addressed in *National Realty and Construction Co., Inc. v. Occupational Safety and Health Review Commission,* 489 F.2d 1257, 1267 (D.C.Cir.1973), "[a]n employer is unfairly deprived of an opportunity to cross-examine or to present rebuttal evidence and testimony when it learns the exact nature of its alleged violation only after the hearing." *See also Pocono Water Co. v. Public Utility Commission,* 158 Pa.Cmwlth. 41, 630 A.2d 971, 973 (1993) ("Due process in matters before the Commission requires that a party be afforded reasonable notice of the nature of the allegations against it so that the party can prepare a suitable defense." *Id.*).

The drafters of the regulations implementing the federal Occupational Safety and Health Act also realized the potential conflict between scope of review and due process, as evidenced by 29 C.F.R. § 2200.92 (1995), which states:

(a) *Jurisdiction of the Commission; issues on review.* Unless the Commission orders otherwise, a direction for review establishes jurisdiction in the Commission to review the entire case. The issues to be decided on review are within the discretion of the Commission but ordinarily will be those stated in the direction for review, those raised in the petitions for discretionary review, or those stated in any later order.

As implied by the federal regulations and the scant case law on this point, though the scope of review is not limited, fairness dictates that a party should be given some notice as to the identity of the issues before the reviewing agency. The difficult issue is to define the extent and formality of the notice, given the competing interests involved.

Appellant asserts that appellee was "fundamentally unfair" in ruling on an issue that appellant did not contemplate would be addressed, and appellee, therefore, violated appellant's right of due process. When we addressed this issue in *Vavasori*, the due process consideration was the adequacy of the hearing. In this case, the issue is one of notice.

Appellant had already been given a full opportunity to present evidence on all the issues before the ALJ. On review, appellee examined the record that was developed by the ALJ, including the transcript of the testimony, and reached his conclusions. Appellee addressed the application of the *Anning–Johnson/Grossman* affirmative defense as it was interpreted by the ALJ, and corrected it in accordance with his interpretation of the law and the evidence. This is not a situation in which appellee asserted new charges or relied on new evidence. If appellant had never been given the opportunity to argue the issue at all, the result would likely be different. An instructive case on this point is *NLRB v. Local Union No. 25*, 586 F.2d 959 (2d Cir.1978).

In *NLRB*, the federal administrative process was almost identical to the one used by MOSH. The ALJ had ruled against the union on a violation of Article XI of the National Labor Relations Act. In his ruling, the ALJ raised an issue, *sua sponte,* questioning the legality of Article XI. On appeal, the union argued that its due process rights were denied because the decision was made without informing it that the legality of the statute was at issue. In addressing the due process considerations, the United States Court of Appeals for the Second Circuit held that:

Since the question of Article XI's legality was not raised in the amended complaint, in the briefs, or in oral argument,

and no evidence was presented concerning that issue, we agree with respondents that they did not receive the notice required by the APA and that the decision of the Administrative Law Judge, as well as the order of the NLRB adopting that decision, cannot stand.

*NLRB*, 586 F.2d at 961 (citations omitted).

Unlike the facts in NLRB, appellant had a full opportunity to argue all aspects of the *Anning–Johnson/Grossman* affirmative defense. Due process requires that the interest of appellee in maintaining a fair and orderly administration of the law be balanced with the opportunity of appellant to argue its position. Due process does not require the particularized notice urged by appellant on the facts of this case when appellant raised the issue as to the applicability of the affirmative defense in question, as a practical matter, one issue indivisible in nature. As we noted earlier, the facts and circumstances of each case dictate the amount of process that is due.[6]

## B.

### The Anning–Johnson/Grossman Defense

We now address appellee's application of the substantive law. Appellant questions appellee's interpretation of the law

---

**6.** Compare appellate review of a lower court judgment. Ordinarily, an appellate court will consider only those issues that were raised or decided by the trial court. There are several exceptions, however, including issues (1) relating to jurisdiction of the court, (2) based on public policy, (3) necessary or desirable to guide the trial court or avoid the expense and delay of another appeal, and (4) situations in which a lower court decided a case correctly but reached the result through faulty analysis. *County Council v. Offen*, 334 Md. 499, 508, 639 A.2d 1070 (1994). Additionally, an appellate court will ordinarily only deal with issues raised and briefed on appeal. *Harrison*, 109 Md.App. at 676, 675 A.2d 1003. The Court is not limited to the rationale urged by the parties, however, but may consider all relevant facts and law relating to the issues presented. *See Gunpowder Horse Stables, Inc. v. State Farm Automobile Ins. Co.*, 108 Md.App. 612, 673 A.2d 721 (1996). The fundamental issue running through the above is whether a party was unfairly prejudiced.

defining the elements of the *Anning–Johnson/Grossman* defense.

■ Under Maryland law, when the Court of Special Appeals is reviewing an appeal originating out of an administrative agency, the role of the appellate court is "precisely the same as that of the circuit court." *Department of Health and Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–304, 641 A.2d 899 (1994). *See* SG § 10–222(h). We examine the agency decision in the same way as the trial court. We examine the decision for errors of law, a nondeferential review, *Lee v. Maryland Nat'l Capital Park and Planning Comm.,* 107 Md.App. 486, 492, 668 A.2d 980 (1995), and to determine if substantial evidence exists to support the conclusion, a deferential review. *See Anderson v. Department of Public Safety and Correctional Services,* 330 Md. 187, 212, 623 A.2d 198 (1993). As the Court of Appeals stated in *State Ins. Comm'r v. National Bureau of Casualty Underwriters,* 248 Md. 292, 309, 236 A.2d 282 (1967):

> Whichever of the recognized tests the court uses [to review an administrative agency decision]—substantiality of the evidence on the record as a whole, clearly erroneous, fairly debatable or against the weight or preponderance of the evidence on the entire record—its appraisal or evaluation must be of the agency's fact-finding results and not an independent original estimate of or decision on the evidence. The required process is difficult to precisely articulate but it is plain that it requires restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions under any of the tests, all of which are similar. There are differences but they are slight and under any of the standards the judicial review essentially should be limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. This need not and must not be either judicial factfinding or a substitution of judicial judgment for agency judgment.

■ With this in mind, we dispose of appellant's second argument quite readily. We find no misunderstanding of the

law by appellee, and his conclusions, therefore, are subject to the substantial evidence standard. It is the decision of appellee that we review, not the decision of the ALJ. If there is substantial evidence to support appellee's decision, we must affirm it, even if there is also substantial evidence to support the ALJ's decision. *Dep't of Health & Mental Hygiene v. Shrieves*, 100 Md.App. 283, 641 A.2d 899 (1994).[7]

There are no regulations that define the duties of a subcontractor who wishes to invoke the *Anning–Johnson/Grossman* defense, as the extent of the defense is determined on a case-by-case basis. *See generally Electric Smith, Inc. v. Secretary of Labor*, 666 F.2d 1267, 1270 (1982) (applying the *Anning–Johnson/Grossman* defense in an OSHA context).

For the defense to be applicable, a subcontractor must show that it neither created nor controlled the hazard and must further show "either that its exposed employees were protected by other realistic measures taken as an alternative to literal compliance with the cited standard or that it did not have, nor with the exercise of reasonable diligence could have had notice that the condition was hazardous." *D. Harris Masonry Contracting Inc. v. Dole*, 876 F.2d 343 (3rd Cir.1989). The efforts taken by the employer must be "at least a 'reasonable' and 'realistic' response as an alternative to literal compliance with applicable safety regulations." *Electric Smith, Inc.*, 666 F.2d, 1267, 1268.

The fundamental purpose of this defense is common-sensical. Under MOSH regulations, and OSHA as well, an employer has an overriding responsibility to make the work place safe for its employees. LE § 5–104(a). In a multi-employer work site, the lines of responsibility often become blurred, and an employee can be exposed to a hazard not of the employer's

---

7. This is subject to the rule that the ALJ's demeanor based findings are entitled to substantial deference and can be rejected by an agency only if it gives strong reasons for doing so. In the case before us, appellee's decision with respect to control of the hazard was not based on demeanor evidence. Appellee adopted the ALJ's findings with respect to lack of reasonable efforts to abate.

making. To complicate the issue further, contracts, labor union rules, or trade practices may dictate who must perform certain safety measures. The end result is that, in a multi-employer work site, actions of one party may often make the work place unsafe for other parties.

Appellant contests appellee's reversal of the ALJ as to the control issue, the first part of the *Anning–Johnson/Grossman* affirmative defense. Appellant argues that it had no means of abatement because abatement could only be performed by the use of caps and it had none in its possession. In his opinion and order, appellee reversed the ALJ on this issue because "to establish lack of control over the hazard, the employer must show that it lacked the ability and expertise to abate the hazard." This was a correct statement of the law. *See Dun–Par Engineered Form Company*, 12 OSHC 1949(BNA) (1986). The record reflects that it requires minimum skill to cap rebar and that it was, in fact, capped while the MOSH inspector was present. Even if appellant had contracted responsibility for safety measures to another, it would have no bearing since "an employer's statutory duty to protect the safety and health of its employees cannot be delegated to others by contractual arrangements." *Anning–Johnson Co.*, 4 OSHC 1193, 1198, n.13 (BNA) (1976) OSAHRC LEXIS 527, 16, n.13 (1976). Appellee, applying the correct law, concluded that the record compelled a finding that appellant had the expertise and ability to abate the hazard. Based on our review of the record, there was substantial evidence to support that conclusion.

The remaining issue before us is the second part of the *Anning–Johnson/Grossman* defense, which goes to the issue of reasonable efforts. We need look no further than the *Grossman* decision to find appellee's understanding of the law as sound. In *Grossman Steel & Aluminum Corp.*, 4 OSHC 1175, (BNA) (1976) OSAHRC LEXIS 528 (1976), the subcontractor performed miscellaneous iron work in the construction of a school building. The building was to be multi-story, and the contract required the general contractor to erect guard-

rails along the open sides of the building. None were erected, and the employer was cited for an OSHA safety violation. The *Grossman* Commission reversed and remanded, noting that it does not

> serve the purpose of the [Occupational Safety and Health] Act to impose liability on a subcontractor who could not realistically be expected to detect a violation in the first place, or abate it once it is discovered, even though his own employees may be exposed.... [But an overriding principle is that] a subcontractor cannot be permitted to close its eyes to hazards to which its employees are exposed, or to ignore hazards of which it has actual knowledge....Each employer has primary responsibility for the safety of its own employees. Simply because a subcontractor cannot himself abate a violative condition does not mean it is powerless to protect its employees....We therefore expect every employer to make a reasonable effort to detect violations of standards not created by it but to which its employees have access and, when it detects such violations, to exert reasonable efforts to have them abated or take such other steps as the circumstances may dictate to protect its employees.

*Grossman*, 4 OSHC 1175, 1189 (BNA) (1976) OSAHRC LEXIS 528, 13.

In a footnote to the cited paragraph, the *Grossman* Commission noted that, "as a general rule, we will not require an employer to remove its employees from the vicinity of the hazard if the condition is not corrected." *Grossman*, 4 OSHC 1175, 1189 (BNA) (1976) OSAHRC LEXIS 528, 13. It is on this statement that appellant relies, arguing that appellee improperly required appellant to leave the job site when the rebar was not capped. Appellant misstates both the ruling of appellee and the law in *Grossman*.

The context in which the *Grossman* Commission made this statement is fundamental. Under the facts in *Grossman*, the employer was not permitted to erect guardrails because he was prohibited from doing so under union rules. The Commission also discussed at length that "it would be

unduly burdensome to require particular crafts to correct violations for which they have no expertise,", 4 OSHC 1175, 1188 (BNA) (1976) OSAHRC LEXIS 528, 10, and in fact the *Grossman* Commission remanded the case to the ALJ to make findings as to the employer's expertise. The Commission wanted to distinguish those situations in which an employer need not stop work in order to correct a known violation because the employees could be made just as safe by other means. Even a perfunctory reading of the decision cannot support appellant's argument that *Grossman* presents a bright line rule defining reasonable measures. A non-creating and non-controlling employer must take reasonable measures to ensure the safety of its employees. These reasonable measures may or may not include stopping work until the hazard is corrected. The determination of what constitutes reasonable efforts is to be made on a case-by-case basis. *Electric Smith Inc.*, at 1270. It is clear from the record that the caps were easily found, given that at the time of the citation, the rebar was capped before the inspector left the site. Consequently, substantial evidence exists to support appellee's conclusion that appellant failed to make reasonable efforts to protect its employees.

For the reasons stated herein, we affirm the judgment of the circuit court.

JUDGMENT AFFIRMED; COST TO BE PAID BY APPELLANTS.